## <u>DECLARATION OF DANIEL SHARP, LEGAL DIRECTOR,</u>
## <u>CENTRAL AMERICAN RESOURCE CENTER</u>

I, Daniel Sharp, pursuant to 28 U.S.C. § 1746, declare as follows:

1.   I make this declaration based on my personal knowledge except where I have indicated otherwise.  If called as a witness, I would testify competently and truthfully to these matters.

2.   I am the Legal Director for the Central American Resource Center ("CARECEN") in Los Angeles, California. CARECEN is a non-profit organization that offers low-cost immigration legal services, community education programs, and advocacy and organizing to achieve fair and more inclusive immigration, education, and labor laws and policies in Los Angeles.  I worked at CARECEN from 1997 – 2000, and I have been employed by CARECEN continuously since July of 2005.

3.   CARECEN is a 501(c)(3) nonprofit corporation, incorporated in Los Angeles, California. Our office is located at 2845 W. Seventh St., Los Angeles CA 90005.

4.   CARECEN's mission is to empower Central Americans and all immigrants by defending human and civil rights, working for social and economic justice and promoting cultural diversity. Since its founding in 1983, when thousands of Central Americans fled the brutality of civil war, CARECEN has worked to change unjust immigration laws, provide lawful status for immigrants, and foster community activism on issues such as education reform, workers' and immigrants' rights, economic justice and community strengthening.

5.   As part of its mission, CARECEN (1) provides legal immigration services; (2) educates immigrant communities; (3) organizes and advocates on behalf of better immigration policies. *First*, CARECEN provides high-quality, affordable immigration legal services to clients throughout Southern California. These services include assistance in applying for naturalization,

Temporary Protected Status ("TPS"), removal defense, relief under the Violence Against Women Act ("VAWA"), U and T visa, adjustment of status applications, and affirmative asylum cases. We provide immigration services at our headquarters in central Los Angeles, a permanent office in the San Fernando Valley (Van Nuys), as well as 18 other offsite locations throughout Los Angeles and Orange Counties, where we offer immigration counseling and legal services on a weekly, bi-weekly or monthly basis. *Second*, CARECEN, educates immigrants through a number of programs for children, youth, and adults. These initiatives include citizenship classes, trainings to develop organizing and advocacy skills, and workshops to facilitate the integration of immigrants into their communities. We provide information on changes in immigration law to the community at our offices and through presentations at various locations around Southern California. We operate a day laborer center that provides information job skills training to workers. We also operate a parent and youth center, and provide academic enrichment and college preparation support to youth. *Third*, CARECEN helps organize immigrant communities to advocate on behalf of their rights on specific policy items. Advocacy activities include legislator visits, forums to educate the community on civic issues, and marches in support of particular policy changes.

6. The CARECEN legal department was created over three decades ago for the purpose of providing legal advice and representation to asylum seekers who fled violence in Central America. Over the years, we have provided legal counseling and *pro se* asylum application preparation assistance to thousands of individuals, while providing direct representation to hundreds. As a key part of its mission, CARECEN continues to provide affirmative and defensive representation for asylum seekers. We currently are representing over 100 individuals who are applying for asylum. We are litigating a majority of these cases in removal proceedings. We also

represent several individuals with "affirmative" asylum applications – i.e. persons not in removal proceedings and filed with the United States Citizenship and Immigration Services ("USCIS"). The majority of our asylum applicant clients are individuals who have entered the country without inspection.

7. Funding for our asylum work is based in large part on the number of cases we handle per year, and the number of cases we anticipate serving. For instance, the California Department of Social Services is one of our largest funding sources for our organization. The state sets a flat rate for representing a client. We receive $2,000 for representing a client in an affirmative application process with USCIS, and $5,000 for representing a client in removal proceedings. This rate does not cover the full cost of our services, nor does it vary depending on the amount of time spent on the case or whether an appeal is taken.

8. We currently have approximately 16 staff members who handle affirmative and defensive asylum cases. These staff members carry out legal intakes, work with clients to fill out paperwork, help clients collect relevant evidence for their case, prepare clients for interviews and hearings, and represent clients in affirmative asylum interviews and in removal proceedings. Our legal staff have also prepared prospective asylum, withholding of removal, and Convention Against Torture applicants for reasonable and credible fear interviews, as well as representing individuals in those interviews.

9. The new Proclamation and Department of Justice ("DOJ") and Department of Homeland Security ("DHS") interim final rule will seriously frustrate CARECEN's mission, divert organizational resources, and cause irreparable harm to the organization.

10. First, CARECEN'S mission as it relates to affirmative asylum applicants and asylum applicants in removal proceedings who have entered without inspection would be frustrated. The

organization would be unable to assist asylum seekers who entered without inspection in submitting their asylum applications affirmatively to USCIS, because they would no longer be eligible. Additionally, this would also affect CARECEN's representation of individuals who have entered without inspection and seek asylum while in removal proceedings.   For example, CARECEN currently represents over 100 clients who are applying for asylum in removal proceedings. Going forward, CARECEN would be forced to assist individuals who are subject to the new policies in applying for withholding and CAT. Compared to asylum applications, withholding and CAT applications require meeting a higher evidentiary standard, and often require more time and greater legal resources. Similarly, because the evidentiary standard for withholding and CAT is higher, these regulatory changes will also likely lead to a greater number of losses in immigration court, and a greater number of appeals filed by attorneys.

11. Moreover, unlike asylum applications, withholding and CAT applications do not allow for a principal applicant to petition for derivative applicants such as children. Therefore, CARECEN would also have to submit a greater number of applications for withholding and CAT, in instances where it represents family units.  This would require significant additional staff time preparing and litigating each case, including preparing separate evidence and putting on witnesses in each separate case.  The additional staff time required to handle such cases would require diverting resources from other critical areas of work. Our other legal service units, including our Survivors of Violence Unit (representing VAWA, U Visa and T Visa applicants), are already working at capacity. Diverting the time of experienced attorneys in these units to provide support to individuals applying for withholding and CAT would place enormous strain on these critical programs.

12. The new Proclamation would also put a financial strain on the organization. As mentioned above, for much of its work in removal proceedings, CARECEN receives a flat fee regardless of the time spent on a particular case. Because withholding and CAT cases are more resource-intensive than asylum cases, precluding certain CARECEN clients from applying for asylum would create a greater financial loss in these cases. In other words, we would likely receive the same funding, but have to devote more hours per case. We would likely have to devote significant additional resources toward appealing cases for clients who would not meet the higher legal standards for withholding and CAT, but would have otherwise been eligible for asylum. The same attorneys who provide affirmative and defensive asylum representation would represent these clients on appeal. This would significantly limit their availability to represent asylum applicants and clients in other types of cases. CARECEN has recently begun a detention practice in the Adelanto detention facility, and has already seen how in withholding/CAT-only cases, attorneys have to devote significantly more resources to these cases, as compared to asylum cases.

13. Moreover, CARECEN would have to divert significant resources in other respects because of the Proclamation and new regulation. This would include devoting staff time and organizational resources to understanding the new policies, its impact on the communities we serve, and subsequently training our staff and educating and advising our clients, prospective clients, and the immigrant community, accordingly. CARECEN provides immigration information to the community through presentations at our offices and various other locations. We also operate a hotline and our receptionists provide general information to the immigrant community. The Proclamation and new regulation will create considerable confusion in the immigrant communities we serve, generating significant inquiries at our offices, on our hotline, and requiring workshops to address and explain the changes to the community. The organization will expend significant

5

resources to adjust to a new regulatory landscape, and likely significantly reduce the number of clients we can assist as a result.

14. CARECEN is also harmed by the inability to provide comment on the new rule before it went into effect.  If the government had provided an opportunity for notice and comment before promulgating the new rule, CARECEN would have submitted comments regarding why the rule is unlawful and factually unsupported.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Daniel Sharp

Executed this 9th day of November, 2018