# SUPPLEMENTAL DECLARATION OF STEPHEN W. MANNING, EXECUTIVE DIRECTOR, INNOVATION LAW LAB

I, Stephen W. Manning, declare as follows:

1. I submit this declaration to supplement my previous declaration in *East Bay Sanctuary Covenant v. Trump*, which was executed on November 9, 2018.

2. In my previous declaration, I explained how the new rule would impact the mission and resources of Innovation Law Lab ("Law Lab"). Because of its significant impact on our organization as well as the impact it has on our clients and others seeking asylum, the Law Lab would have taken advantage of an opportunity to provide comments on a proposed rule. The Law Lab is committed to providing well-researched, data-driven public comment and legal analysis of regulations affecting our organization and our clients. For example, the Law Lab co-leads an initiative called Protect Oregon's Immigrant Families to respond to the proposed "public charge" regulation change currently open for public comment. The Law Lab has collected data, drafted sample materials, provided targeted research, and engaged in outreach to diverse organizations and individuals in promoting public knowledge and discussion about the public charge proposed rule. The Law Lab will soon provide its own comments, while supporting individuals and organizations in submitting their own. Similarly, the Law Lab provided legal analysis and support to over 35 local organizations commenting on the proposed *Flores* rule. Law Lab staff filed their own comments and public opposition to the proposed *Flores* regulation changes with the Federal Register.

3. Likewise, had the opportunity been provided, the Law Lab would have used a similar data-driven, well-researched approach to explain why the new rule would likely not achieve the objectives it has set forth, as well as comment on the quality of the data proffered in

support of the new rule, and would have questioned the causal relationship between the proffered data and the objective the new rule seeks to achieve.

4.  I also would have added in my comments that there are many reasons why, despite criminal penalties for illegal entry, many asylum seekers cross between ports to apply for asylum. Among those reasons are: individuals often face long lines at ports of entry or are turned away completely, leaving them in dangerous conditions in Mexico; they are often unsophisticated about where they must cross or ports of entry are too far away; and criminal gangs force them to cross between ports.

I hereby declare under the penalty of perjury pursuant to the laws of the United States that the above is true and correct to the best of my knowledge.

EXECUTED this 16th day of November, 2018.

Stephen W. Manning, OSB #013373