# SUPPLEMENTAL DECLARATION OF ERIKA PINHEIRO

I, Erika Pinheiro, under the penalty of perjury pursuant to 28 U.S.C. § 1746, declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I would testify competently and truthfully to these matters.

2. I submit this declaration to supplement my previous declaration in East Bay Sanctuary Covenant v. Trump, which was executed on November 9, 2018.

3. The implementation of the interim final rule, "Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims," and the Presidential Proclamation Addressing Mass Migration Through the Southern Border of the United States has created a crisis situation for Al Otro Lado.

4. In recent weeks, Grupo Beta, a service by the National Institute of Migration of Mexico, has refused to allow unaccompanied minors who have journeyed to the southern border to seek asylum to get on the list to cross the border at a port of entry. Al Otro Lado has been told that if these children show up at the port of entry and attempt to get on the list, they will be taken into custody by the Mexican child custody agency.

5. For example, Al Otro Lado is working with a child named B.I., a sixteen year old boy from Mexico, who left his home along with his sister to escape from violent abuse they had been suffering from years. On November 1, 2018, B.I. and his sister went to a port of entry ("POE"), but the U.S. officials would not let them pass into the United States. Instead, the officials held B.I. and his sister in the POE for several hours, and then moved them to a cell in a

1

different building, where they stayed for about 18 hours. After speaking briefly with an official from the Mexican consulate, B.I. and his sister were deported back to Tijuana without ever having been given the opportunity to apply for asylum, despite the fact that they indicated that they wanted to apply for asylum.

6. On November 6, 2018, B.I. and his sister went to a different POE. Rigo, a staff member at Al Otro Lado, went with them. Grupo Beta, the group organizing the list of asylum seekers at the POE, told Rigo and B.I. that children could not get on the list unless they had original identity documents and were accompanied by a parent. B.I. was unaccompanied and did not have original documents with him. Grupo Beta also said that if any unaccompanied children tried to get on the list, they will be taken into custody by the Mexican child custody agency.

7. B.I. has no family he can live with safely in Mexico. He does not feel safe staying in Mexico. He wants to apply for asylum in the United States. He is worried that if he goes back to a port of entry, he will be unable to get on the list to apply for asylum.

8. Al Otro Lado is also working with another unaccompanied minor, D.D., who had the same experience when an Al Otro Lado staff member went with her to a POE so that she could get in line to apply for asylum. D.D. is fifteen years old and fled El Salvador to escape her grandfather's sexual abuse.

9. D.D. left El Salvador in the middle of October 2018. It took her about three weeks to travel from El Salvador to Tijuana. When she got to Tijuana, she went to El Chaparral plaza near the San Ysidro port of entry. People she was traveling with told her she had to go get a number in order to apply for asylum in the United States. She went to the plaza and showed

her identity documents, and the people in charge of the list gave her a number. She waited at a shelter for youth in Tijuana called Casa Imca.

10. On November 6, 2018, Rigo from Al Otro Lado went with D.D. to El Chaparral plaza. The people organizing the list of asylum seekers told Rigo and me that unaccompanied minors could not get on the list unless they had original identity documents and were accompanied by a parent. D.D. was not accompanied by her parents.

11. D.D. is afraid to return to El Salvador because her family there now knows about the sexual abuse she suffered. She is afraid that she would be in danger from her grandfather if she returns. She hopes she will be allowed to apply for asylum in the United States, but is concerned because she was told that she cannot apply without her parents.

12. Before the new rule, those children who were refused entry at a port would then enter the United States without inspection and turn themselves in to immigration authorities to apply for asylum.

13. Since the new rule was announced on November 9, 2018, if these children enter without inspection, they will not be able to apply for asylum. These children now have no way to apply for asylum in the United States, and are effectively trapped in Mexico in dangerous border towns, generally without any resources.

14. In the past, children not allowed on a list or not otherwise allowed to present at a port of entry would have, out of necessity, entered between ports of entry in order to apply for asylum.

15. Since the new rule was announced, Al Otro Lado has been overwhelmed with children who traveled to the southern border of the United States to apply for asylum but now

cannot do so. These children are very vulnerable, as they are unaccompanied and so have no one to look out for them in Tijuana, a city currently seeing record levels of violence. Lesbian, gay, bisexual, and transgender unaccompanied minors are especially vulnerable.

16.  Caring for these children is incredibly time consuming and causing a near complete diversion of Al Otro Lado's resources away from its core mission, which is providing legal services. In addition to providing these children with legal advice, attending to the many non-legal needs of Al Otro Lado's unaccompanied children clients is forcing Al Otro Lado to divert resources away from advising the many other clients who need the organization's legal help, thus undermining our ability to achieve our core mission. For example, staff members are going with the children to try to get them on the list to cross at the port of entry. Staff have also had to negotiate with Mexican officials so that they will not take these children into custody and instead allow them to stay at a local youth shelter while Al Otro Lado determines the best way to ensure that the children have access to a legal means to seek asylum in the United States. Accompanying one to two children to do this takes three to four hours. One staff member has been taking care of these children full-time for the past three days.

17.  Al Otro Lado currently is providing legal advice and support to nine children in Tijuana, Mexico, who wish to seek asylum in the United States. Five of these children are from Honduras and identify as LGBT (lesbian, gay, bisexual, or transgender); they have strong asylum claims.

18.  Al Otro Lado was connected to these clients by Casa YMCA, a shelter where the children are staying.

4

19. These clients have tried to obtain a number to join the list to present themselves for asylum, but Al Otro Lado has been told by Grupo Beta that the children need to have a parent and original identity documents in order to present and that if they try to take a number they will be taken into custody by Mexican officials.

20. These clients cannot be left alone in Tijuana because of the danger of apprehension by Mexican officials. Al Otro Lado therefore has to accompany them anytime they leave the shelter at which they are staying for legal proceedings. This effort is far beyond anything Al Otro Lado usually does for its clients and has been a huge drain on Al Otro Lado's resources.

21. LGBT children cannot safely stay in Mexico. They are at risk of violence and persecution. Yet there is now no way for them to access the asylum system in the United States. Al Otro Lado's staff members have been overwhelmed by work outside our core mission since the new rule went into effect.

22. The new rule also seriously jeopardizes a major source of Al Otro Lado's funding. Al Otro Lado receives funding from the California Department of Social Services to represent detained immigrants in their bond proceedings. We have expended significant organizational resources establishing referral systems with the Federal Public Defender office and Innovation Law Lab's Border X Project to receive cases of asylum seekers who have entered without inspection. Al Otro Lado is required to complete a certain number of cases before the end of next year. Since the rule went into effect, we have not received a single referral for a bond case, as persons who enter without inspection are ostensibly being put into "Withholding-only" proceedings and no longer initially eligible for bond. We will have to significantly remake our

5

bond representation program to establish new referral sources, train staff on how to represent other types of clients in bond proceedings, and revise all the templates and materials we currently use in bond hearings for asylum seekers. This will cause an immediate diversion of a significant amount of our resources, and potentially compromise our ability to comply with our obligations under current funding.

23. The interim final rule mentions the caravan of migrants, primarily from Central America, making their way to the United States. There have been several prior caravans in recent years. None caused any serious danger or otherwise threatened public safety. Caravan members typically seek admission at ports of entry.

I hereby declare under penalty of perjury that the foregoing is true and correct.

*Erika Pinheiro* (signature)
Erika Pinheiro

Executed this 16th day of November, 2018