## DECLARATION OF LEON RODRIGUEZ

I, Leon Rodriguez, hereby declare as follows:

1. I am over 18 years old and have personal knowledge of the facts described herein.

2. I served as the Director of United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), from July 2014 to July 2017.

3. Prior to serving as USCIS Director, I served as the Director of the Office for Civil Rights at the Department of Health and Human Services from 2011 to 2014. From 2010 to 2011, I served as Chief of Staff and Deputy Assistant Attorney General for Civil Rights at the Department of Justice ("DOJ").

4. From 2007 to 2010, I was County Attorney for Montgomery County, Maryland. I was a principal at Ober, Kaler, Grimes & Shriver in Washington, DC from 2001 to 2007. I served in the U.S. Attorney's Office for the Western District of Pennsylvania from 1997 to 2001, first as Chief of the White Collar Crimes Section from 1997 to 1999 and then as First Assistant U.S. Attorney until my departure. Before joining the U.S. Attorney's Office, I was a trial attorney in the Civil Rights Division at DOJ from 1994 to 1997 and a senior assistant district attorney at the Kings County District Attorney's Office in New York from 1988 to 1994.

5. I received a B.A. from Brown University and a J.D. from Boston College Law School. I am admitted to the bars of New York, Maryland, and the District of Columbia.

6. USCIS' adjudication operations are funded through fees paid by applicants for immigration benefits. The agency's significant budget funds approximately 8,000,000 adjudications each year, which are not subject to congressional appropriations. In any given year, asylum adjudications represent only a small portion of the overall universe of cases.

7.	USCIS asylum adjudications are conducted by specially trained asylum officers who are ordinarily stationed in one of eight asylum offices located in major U.S. cities. Whether credible fear interviews are conducted for asylum seekers who entered at ports of entry or between ports of entry, asylum officers ordinarily need to be detailed away from their duty stations to conduct interviews. In either case, USCIS must deploy asylum officers to screen individuals in expedited removal proceedings who express a fear of return to their home countries. Beyond that, it has always been my understanding that USCIS expends the same level of resources to process asylum seekers who enter the United States at ports of entry and asylum seekers who enter between ports of entry.

8.	During these screenings, which are known as "credible fear interviews," asylum officers assess whether there is "a significant possibility . . . that the alien could establish eligibility for asylum[.]" 8 U.S.C. § 1225(b)(1)(B)(v). To make these determinations, asylum officers consider the facts of each case as well as conditions in the individual's country of origin. Credible fear determinations are also informed by asylum officers' briefing information on country conditions, which is drawn from various government sources, both confidential and public, and which give officers baseline information that they use to determine whether an asylum claim comports with known conditions in the asylum seeker's country. In my experience, the percentage of positive credible-fear determinations for noncitizens from a given country corresponds to the level of persecution, as defined in the asylum laws, in that country. More dangerous countries tend to generate more positive credible-fear determinations.

9.	To my knowledge, manner of entry is considered in determining whether to detain an asylum seeker; however, prior to the interim final rule and proclamation being challenged in

this case, an individual's manner of entry into the United States was not a factor to be considered in a credible fear adjudication.

10. Certain individuals who fear return to their countries are not eligible for asylum. If they are subject to expedited removal, they must undergo a "reasonable fear interview" by an asylum officer. I am not aware of any information that the time required to conduct a credible fear interview is meaningfully different from the time required to conduct a reasonable fear interview.

I hereby declare under the penalty of perjury pursuant to the laws of the United States that the above is true and correct to the best of my knowledge.

Executed this 6th day of November 2018

*Leon Rodriguez*