Jennifer Chang Newell (SBN 233033)
Cody Wofsy (SBN 294179)
Spencer Amdur**** (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Lee Gelernt*
Judy Rabinovitz*
Omar C. Jadwat*
Celso Perez (SBN 304924)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*ojadwat@aclu.org*
*cperez@aclu.org*

*Attorneys for Plaintiffs* (Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

East Bay Sanctuary Covenant, *et al*.,

*Plaintiffs*,

v.

Donald J. Trump, President of the United States, *et al*.,

*Defendants*.

Case No.: 18-cv-06810-JST

**OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY TEMPORARY RESTRAINING ORDER PENDING APPEAL**

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1666 Connecticut Avenue NW, Suite 100
Washington, D.C. 20009
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Baher Azmy*
Angelo Guisado*
Ghita Schwarz*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gshwartz@aclu.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclunc.org*
*vtalla@aclunc.org*

*Attorneys for Plaintiffs*

**Admitted pro hac vice*
***Application for pro hac vice pending*
****Pro hac vice application forthcoming*
*****Application for admission forthcoming*

The government's stay motion should be rejected. This Court already concluded that a temporary restraining order is warranted in this case. *See* ECF No. 43. The standard for a stay pending appeal mirrors the standard for an injunction in the first instance. *Compare id*. at 17 (standard for a TRO) *with* Mot. 1-2 (standard for a stay). Thus, in asking this Court for a stay, the government is in effect asking that the Court reverse its prior TRO decision. But every one of the TRO factors favors the temporary injunction the court issued, and therefore militates against a stay of that injunction. In short, the Court's decision was correct, and the government has offered no legitimate new reason to revisit it. Defendants plainly disagree with the merits of this Court's decision, but the government's proper recourse to raise that disagreement is an appeal in the event this Court issues a preliminary injunction after the December 19 hearing.

1. As an initial matter, the balance of hardships and public interest tip decisively in favor of the Plaintiffs. Plaintiffs "made a clear showing that it is likely that they and their clients will suffer irreparable harm absent a TRO." ECF No. 43 at 32. Plaintiffs themselves have suffered and will suffer irreparable injuries in the absence of the protection of the TRO, including the loss of an opportunity to comment before the government's dramatic changes to asylum law are put in place. *See id*. at 31-32. Moreover, Plaintiffs' clients and other asylum seekers will be exposed "to numerous harms while waiting to present their claims, including not only physical privations like physical assault but also the loss of valuable, potentially meritorious claims for asylum." *Id.* at 32. Those harms will only increase if the TRO is lifted.

The government's responses to these harms is unpersuasive. It asserts that none of Plaintiffs' clients are impacted by the Rule. But that is flatly wrong. Plaintiffs represent children who are trapped in Mexico—unable to seek asylum at a port of entry and, because of the Rule, unable to seek asylum by entering between ports. ECF No. 35-8 ¶¶13-15; ECF No. 43 at 12. Likewise, while the government attempts to shrug off the harms to the Plaintiffs themselves as merely "financial," Mot.

5, in fact the new Rule is requiring dramatic diversion of Plaintiffs' resources and efforts, undermining their core missions, and placing their operations in jeopardy, all in ways that cannot be remedied after the fact, *see* ECF No. 43 at 11-13, 31. And the assertion that the ability to comment *after* the Rule is in effect somehow cures the injury of unlawfully bypassing the Congressionally-mandated notice and comment procedures required *prior* to the implementation of a Rule is contradicted by caselaw and would gut the APA's statutory requirement. *See id*. at 31. In support of this baseless argument, Defendants cite only a case that did not even involve a notice-and-comment issue. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980).

As for its own side of the balance, the government again offers only vague platitudes about executive power. It recycles its reliance on the government's interest in immigration enforcement. Mot. 2-3. But as this Court already explained, "[t]he executive's interest in deterring asylum seekers—whether or not their claims are meritorious—on a basis that Congress did not authorize carries drastically less weight" than actions that are consistent with Congress's dictates—if it carries any weight at all. ECF No. 43 at 32. The government resists this conclusion, urging that immigration is also "an inherent executive power." Mot. 3 (internal quotation marks omitted). But "[w]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb . . . ." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring). Thus the government's assertion of "a separation-of-powers harm" due to the TRO, Mot. 4, gets it exactly backwards, as the Court's action was necessary to protect the separation of powers. Indeed, the Court's order maintains a legal status quo—the statutorily recognized entitlement to seek asylum between ports of entry—that has been in effect for nearly *40 years*. It strains credulity to argue that maintenance of that congressionally-mandated regime during the days-long pendency of the preliminary injunction proceeding would cause grave damage.

Next, the government contends that any time the *executive* is enjoined from effectuating its

policy, it is irreparably injured. Mot. 3 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *O Centro Espirita Beneficiente Uniao de Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002)). But *King* and *O Centro* both emphasized that the injunctions constrained duly enacted statutes. Again, here the Court has already concluded that the new policy "irreconcilably conflicts with the INA and the expressed intent of Congress." ECF No. 43 at 2.[1] Moreover, both cases relied not solely on some abstract harm, but on "ongoing and concrete harm" to the government. *King*, 567 U.S. at 1303; *see O Centro*, 314 F.3d at 467 (noting "extensive judicial and administrative oversight" needed to effectuate injunction).[2]

Nor can the unexplained summary stay orders in the last round of litigation regarding the travel ban, *see* Mot. 2, carry water for the government here. As this Court noted, "[n]o court has ever held that § 1182(f) 'allow[s] the President to expressly override particular provisions of the INA.'" ECF No. 43 at 23 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2411 (2018)). Indeed, in *Hawaii*, the Supreme Court ultimately concluded that the President's action in that case was *consistent* with the relevant statutes, in stark contrast to the situation here. In any event, as this Court also noted, the government has conceded that "the Proclamation does not render any alien ineligible for asylum" and so is not doing the work, as it was in the travel ban. *Id*. at 17.

Finally, it cannot be that the government may simply invoke vague foreign negotiations as sufficient to warrant a stay—particularly in the context of a notice-and-comment claim where the applicability of the foreign policy exception is a disputed issue. *See* ECF No. 43 at 27 ("Defendants do not say in their opposition, and were unable to explain at the hearing, how eliminating notice and comment would assist the United States in its negotiations.").[3]

---

[1] *Heckler v. Lopez*, 463 U.S. 1328 (1983) (Rehnquist, J., in chambers), is likewise inapposite for this reason, *see id*. at 1331 (injunction interfered "with the distribution between administrative and judicial responsibility . . . which *Congress* has established") (emphasis added).

[2] *See also INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) ("The order would impose a considerable administrative burden on the INS . . .").

[3] *Adams v. Vance*, 570 F.2d 950, 957 & n.13 (D.C. Cir. 1978), involved an injunction requiring the

2. Defendants' arguments regarding likelihood of success on the merits likewise offer nothing to undermine this Court's prior decision. As this Court held, Plaintiff organizations have suffered cognizable injuries in fact sufficient to establish Article III standing. Namely, the Rule causes economic losses, frustrates their missions, and forces them to divert resources in response. *See* ECF No. 43 at 8-13. Any one of these theories is enough to confer standing. Defendants offer no reason to disturb the Court's conclusion.

Contrary to Defendants' claim, Plaintiffs submitted ample evidence that the Rule frustrates their core missions. *See, e.g.,* ECF No. 35-8 ¶¶ 4-6, 10, 13 (explaining that, because of the Rule, clients with potentially meritorious asylum claims are unable to pursue them); ECF No. 8-3 ¶¶ 5, 10; ECF No. 8-7 ¶¶ 6, 8-9, 15; ECF No. 8-6 ¶¶ 9-11; *see also* ECF No. 43 at 11 (stating Plaintiffs' "mission has been frustrated in numerous cognizable ways").[4]

The record also clearly demonstrates that Plaintiffs have been forced to respond to these frustrations by diverting resources to efforts outside their core services. *See* ECF No. 8-3 ¶¶ 5, 10-11, 13; ECF No. 8-4 ¶¶ 9-10, 12-13; ECF No. 8-6 ¶¶ 8-12; ECF No. 8-7 ¶¶ 14-15, 17-19; ECF No. 35-8 ¶¶ 14-16. The Ninth Circuit has held similar diversions to be sufficient to satisfy *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). *See* ECF No. 43 at 9-10.

In addition, Plaintiffs will suffer an imminent loss of funds and the potential closure of entire organizational programs because of the Rule. *See* ECF No. 8-3 ¶ 12; ECF No. 8-4 ¶¶ 11-12; ECF No. 8-6 ¶ 11; ECF No. 8-7 ¶¶ 14-16. Much of their funding is directly tied to their ability to pursue

government to lodge an objection with an international body, which, the government's detailed evidence indicated, would "substantially endanger the interests of the United States." The government has offered nothing remotely resembling such a showing here.

[4] Defendants criticize the Court for pointing to the government's practice of "metering" asylum seekers at ports of entry and the barriers unaccompanied children face in getting on the list to present at a port, arguing that those practices and policies are not part of the Rule or Proclamation. *See* Mot. 5-6. But Defendants largely ignore the Court's point that "[b]ecause of the Rule" Plaintiffs' clients "are significantly delayed or wholly unable to pursue [their potentially meritorious asylum] claims, which are the Organizations' core service." ECF No. 43 at 12; *see also id.* at 30 (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) ("[A] plaintiff [seeking preliminary injunctive relief] 'need not further show that the action sought to be enjoined is the exclusive cause of the injury.'")).

affirmative asylum claims on a case-by-case basis. *See* ECF No. 8-3 ¶ 7; ECF No. 8-4 ¶ 11; ECF No. 8-7 ¶¶ 15-16. Defendants assert that Plaintiffs can simply begin representing asylum seekers who enter at ports of entry, Mot. 6, but that is no answer to Plaintiffs' harm. In the time it will take Plaintiffs to build new programs to effectively serve their current client population in light of the changed policy, or to serve other populations, they will suffer irreparable harm. *See Doe v. Trump*, 288 F. Supp. 3d 1045, 1083 (W.D. Wash. 2017); *Exodus Refugee Immigration, Inc. v. Pence*, 165 F. Supp. 3d 718, 739 (S.D. Ind. 2016) (granting preliminary injunction where organizational plaintiff presented evidence that as a result of a loss of funding, even if only temporary and able eventually to be reimbursed, "its organizational objectives would be irreparably damaged by its inability to provide adequate social services to its clients"), *aff'd* 838 F.3d 902, 904 (7th Cir. 2016) ("Without the injunction, Exodus, if unable (as it fears) to obtain the necessary funds from another source, will be unable to provide essential assistance to the refugees.").

This Court also correctly concluded that Plaintiffs have third-party standing to assert the legal rights of their unaccompanied minor children clients who wish to enter the United States to apply for asylum but cannot do so in significant part because of the new asylum ban. Defendants take issue with the Court's conclusion that these clients are hindered in their ability to assert their own rights. Mot. 6-7. But the Supreme Court has made clear that the "hindrance" factor is not a high bar. The third party need not face an "insurmountable" barrier to asserting her rights; it is enough that there be a "genuine obstacle." *Singleton v. Wulff*, 428 U.S. 106, 116-117 (1976); *see also, e.g., Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017) ("third-party standing is allowed . . . when the third party is *less able* to assert her own rights") (emphasis added). Here, Plaintiffs' clients face several serious obstacles. Critically, the clients are minor children. Courts have repeatedly recognized that being a minor is a hindrance to asserting one's own rights. *See Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 (1st Cir. 2007) (explaining that "hindrance" is "rather obvious in the case of minor children"); *Marin-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir.

2011); *Aid for Women v. Foulston*, 441 F.3d 1101, 1114 (10th Cir. 2006) ("the fact that those patients are minors is an additional obstacle—minors are generally not legally sophisticated and are often unable even to maintain suits without a representative or guardian").[5] These children clients are also uniquely vulnerable given that they are fleeing persecution and so may wish to avoid drawing attention to themselves through litigation, particularly in light of Defendants' professed opposition toward asylum seekers. *See Exodus Refugee Immigration*, 165 F. Supp. 3d at 732. Finally, because the children are unable to present themselves at ports of entry, *see* ECF No. 35-8, ¶¶ 4-6, 10, they are essentially trapped in dangerous border towns without any opportunity to apply for asylum. *See* ECF No. 8-4 ¶¶ 38-39 (noting recent record-high murder rate in border town); ECF No. 35-8, ¶¶ 13-15.

Defendants assert that because Plaintiffs have an existing attorney-client relationship with the children whose rights they are asserting indirectly, there can be no meaningful hindrance to Plaintiffs filing suit on behalf of their clients directly, i.e., with the children as plaintiffs. *See* Mot. 7. But if the existence of an attorney-client relationship meant that there could be no hindrance to a client asserting her own rights, then an attorney-client relationship could never be the basis for third-party standing. Yet the Supreme Court has held that such relationships suffice. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989); *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). Moreover, the legal avenues to seek review that the government invokes are not available to Plaintiffs' clients, as they are not in removal (or expedited removal) proceedings. And courts regularly recognize that non-legal hindrances are sufficient to satisfy *Powers* even where avenues for legal review are readily available. *See, e.g.*, *Powers*, 499 U.S. at 414-15; *Singleton,* 428

[5] This feature alone is sufficient to distinguish *Am. Immigration Lawyers Ass'n (AILA) v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000), which did not involve minor children clients. Moreover, *AILA* in no way supports Defendants' sweeping claim that "*[a]ny* putative practical obstacles that prospective immigrants may face in bringing lawsuits are generally insufficient to support third-party standing." Mot. 6 (emphasis added). *AILA* turned on the specific jurisdictional provisions governing expedited removal proceedings—which this Court noted are not at issue here. *See* ECF No. 43 at 35.

U.S. at 117; *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 (3d Cir. 2002).

The government similarly offers nothing to disturb the Court's zone-of-interest holding. It asserts that Plaintiffs cannot rely on their clients' interests, Mot. 6, but the Court already held otherwise, relying on a case that the government does not address, *see* ECF No. 43 at 16 (citing *FAIC Secs., Inc. v. United States*, 768 F.2d 352, 357-58 (D.C. Cir. 1985) (Scalia, J.)). The one case the government does cite did not involve third party standing at all. *See Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996); *see also id.* at 1236 (holding that advocacy "foundations" were "suitable champions," for zone-of-interests purposes, to advance the interests of the "individuals" they represent).

The government also barely addresses the ways in which Plaintiffs themselves come within the relevant zones of interest. For a notice-and-comment claim, "the APA's notice and comment provision" provides the relevant zone of interest. *California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 823 (N.D. Cal. 2017) (Gilliam, J.). And while the government asserts that the INA's zone of interests does not include organizations, it does not mention the cases holding otherwise, *see* ECF No. 35 at 6, and it fails to meaningfully address the many ways in which the INA and Refugee Act embed such organizations into the fabric of the asylum and refugee system, *see id.* at 5-6.[6]

3. On the merits, the government fails to cast doubt on the Court's conclusion that the new Rule violates the INA. The government again relies on *Komarenko v. INS*, 35 F.3d 432 (9th Cir. 1994), for the idea that the executive may establish categorical limits on asylum. But, as the Court explained, that argument addresses a strawman. ECF No. 43 at 21 n.16. *Komarenko* addressed a regulatory limit on asylum where the statute was "silent." 35 F.3d at 436. Here, Congress was emphatic that the manner of entry may not be adopted as a basis to deny asylum. Thus no deference

[6] The only new case the government cites on this issue, *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1423 (11th Cir. 1995), held only that organizations did not represent, and were not injured by, the repatriation of individuals who had agreed in writing to be repatriated.

is warranted.[7]

Finally, the government adds nothing of substance to its prior arguments regarding notice and comment. Its assertion that the foreign affairs exception does not require a showing of "definitely undesirable international consequences" remains foreclosed by precedent. *See* ECF No. 43 at 25 (quoting *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980) (per curiam)). And the striking claim that, to invoke good cause, "[a]ll the government must do is state its reasons" likewise ignores the law. In *United States v. Valverde*, 628 F.3d 1159 (9th Cir. 2010), for instance, the Ninth Circuit rejected the government's proffered reasons as "conclusory" and "speculative," *id*. at 1164. The same is true here. To hold otherwise would allow the "good cause" *exception* to swallow the notice-and-comment rule. *See* ECF No. 43 at 28 ("[T]he good cause exception should be interpreted narrowly, so that the exception will not swallow the rule.") (internal quotation marks omitted).[8]

*          *          *

The Court has already placed this case on an expedited preliminary injunction schedule. The request for a stay should be denied, and the case should proceed on the expedited schedule.

**CONCLUSION**

The Court should deny the stay motion.

---

[7] Nor is there merit to the government's international law argument. Mot. 8-9. It again relies on cases addressing unlawful reentry after an individual has been removed. *See id*. (citing *Cazun v. Attorney General, United States*, 856 F.3d 249, 257 n.16 (3d Cir. 2017); *Mejia v. Sessions*, 866 F.3d 573, 588 (4th Cir. 2017)); *see also* ECF No. 35 at 13 n.10. But whatever Article 31's application to that situation—a topic that has generated divergent views, *see Garcia v. Sessions*, 856 F.3d 27, 57-59 (1st Cir. 2017) (Stahl, J. dissenting)—here the Rule categorically punishes refugees based on their "*illegal entry or presence*" in clear conflict with Article 31, ECF No. 43 at 20 (internal quotation marks omitted); *see also* ECF No. 8-5 ¶ 6.

[8] By contrast, *Malek-Marzban v. Immigration & Naturalization Serv.*, 653 F.2d 113, 116 (4th Cir. 1981), which the government cites, addressed the "urgency of the international crisis" created by "the unlawful detention of American citizens in the United States Embassy in Tehran." None of the other cases the government newly cites on this issue even addressed a notice-and-comment claim. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010); *Oryszak v. Sullivan*, 576 F.3d 522, 525-26 (D.C. Cir. 2009).

Dated: November 29, 2018

Respectfully submitted,

/s/Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Omar C. Jadwat*
Celso Perez (SBN 304924)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*ojadwat@aclu.org*
*cperez@aclu.org*

Jennifer Chang Newell (SBN 233033)
Cody Wofsy (SBN 294179)
Spencer Amdur**** (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclu.org*
*vtalla@aclu.org*

Melissa Crow***
SOUTHERN POVERTY LAW CENTER
1666 Connecticut Avenue NW, Suite 100
Washington, D.C. 20009
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

Baher Azmy*
Angelo Guisado*
Gita Schwarz*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwartz@ccrjustice.org*

*Attorneys for Plaintiffs*

**Admitted pro hac vice*
***Application for pro hac vice pending*
****Pro hac vice application forthcoming*
*****Application for admission forthcoming*