United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EAST BAY SANCTUARY COVENANT, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 18-cv-06810-JST

**ORDER DENYING MOTION FOR STAY PENDING APPEAL**

Re: ECF No. 52

On November 19, 2018, the Court issued a temporary restraining order enjoining the implementation of a joint interim final rule promulgated by the Attorney General and the Department of Homeland Security. ECF No. 43. That rule allows asylum to be granted only to those who cross the southern border under conditions set by the President. Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims, 83 Fed. Reg. 55,934 (Nov. 9, 2018) (to be codified at 8 C.F.R. pts. 208, 1003, 1208) (the "Rule"). Combined with the terms of a concurrently-enacted Presidential Proclamation, the Rule denies asylum to anyone who crosses the southern border anywhere besides a designated port of entry, even if he or she has a meritorious asylum claim. The Court concluded that the Rule is probably invalid because it directly conflicts with a statute passed by Congress; that there were serious questions whether the Rule was passed without the required procedural protections; and that allowing the Rule to go into effect would harm both asylum seekers with legitimate claims and the organizations who represent them.

Defendants now ask the Court to stay its ruling and allow the Rule to go into effect while they appeal the Court's temporary restraining order to the Ninth Circuit. The law provides that the Court should only grant a stay if the Defendants can show they are likely to win their appeal or if

the balance of harms tips in their favor. Defendants have not met this burden. They still have not shown that the Rule is a lawful exercise of Executive Branch authority or that any significant harm will accrue from continuing to implement the existing immigration laws passed by Congress, which is what the temporary restraining order requires. Nor have Defendants rebutted the significant harms that will be suffered by asylum seekers with legitimate claims and the organizations that assist them.

Accordingly, for the reasons set forth below, Defendants' motion for stay will be denied.

## I. LEGAL STANDARD

A district court has the power to stay proceedings "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for [the] litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The issuance of a stay is a matter of judicial discretion, not a matter of right, and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). In exercising its discretion, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (citation omitted). Under Ninth Circuit precedent, the movant "must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the [movant's] favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (per curiam).

## II. DISCUSSION

### A. Likelihood of Success on the Merits

In their motion for stay, Defendants argue that they are likely to prevail on appeal for two main reasons: (1) the case is not justiciable because the Plaintiff Immigration Organizations do not have standing to bring their claims; and (2) the Court incorrectly found that the Rule was probably invalid. The Court is not persuaded by these arguments.

As to the first point, Defendants have not carried their burden to show a substantial case that this action is not justiciable. First, Defendants argue that any injury is not traceable to the Rule because the Rule does not cause the "metering" practices that interfere with the Immigration Organizations' functions. ECF No. 52 at 6-7. The Court rejects this argument because a litigant "need not eliminate any other contributing causes to establish its standing." *Barnum Timber Co. v. E.P.A.*, 633 F.3d 894, 901 (9th Cir. 2011). Moreover, the express purpose of the Rule is to "channel [asylum seekers] to ports of entry," by removing alternative avenues to apply for asylum, thereby exposing asylum seekers to the Government's practices. 83 Fed. Reg. 55,934, 55,934 (Nov. 9, 2018). Defendants also suggest – with no citation to any authority – that it is irrelevant whether this interferes with the Immigration Organizations' ability to provide their services, so long as they can still do so to some degree. ECF No. 52 at 6-7. This overlooks well-established binding precedent. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc); *Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975).

Second, Defendants' argument that the zone-of-interests test cannot be satisfied by a third party's interests lacks merit. *See Am. Immigration Lawyers Ass'n v. Reno ("AILA")*, 199 F.3d 1352, 1357 (D.C. Cir. 2000); *FAIC Secs., Inc. v. United States*, 768 F.2d 352, 357-58 (D.C. Cir. 1985) (Scalia, J.). *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996), which did not involve third-party standing, is not to the contrary.

Third, Defendants contest whether the Organizations have third-party standing to raise their clients' claims. As an initial matter, Defendants assert that this argument was improperly raised for the first time on reply. ECF No. 52 at 5-6. As noted in the Court's temporary restraining order, Defendants neither requested an opportunity to respond nor raised an objection at the hearing on the TRO, even though Plaintiffs not only made these points in their reply brief but argued them at the hearing. ECF No. 43 at 7 n.8; ECF No. 45 at 50:9-51:6. The Court therefore exercised its discretion to consider the Immigration Organization's third-party standing argument. ECF No. 43 at 7 n.8. The Court likewise now exercises its discretion to consider Defendants' prudential standing objections raised for the first time in their stay motion.

Defendants contest only whether there is "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Their claim is unpersuasive.[1] As the Organizations point out, courts have generally held that a third-party child's minor status, standing alone, is a sufficient hindrance. *Marin-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir. 2011); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 (1st Cir. 2007); *see also Smith v. Org. of Foster Families For Equal. & Reform*, 431 U.S. 816, 841 n.44 (1977) ("[C]hildren usually lack the capacity to make that sort of decision [as to how best to protect their interests], and thus their interest is ordinarily represented in litigation by parents or guardians."). While these cases have involved parents or foster parents asserting a child's rights, here, the Organizations' clients are unaccompanied alien minors for whom their attorneys are naturally the "best proponents." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989).

Moreover, Defendants ignore the practical realities facing the Organization's other clients under the Rule. Any asylum seeker who enters the United States in violation of the Rule in order to contest its validity undertakes a substantial risk of forfeiting an otherwise meritorious asylum claim. As Justice Scalia noted in *MedImmune, Inc. v. Genentech, Inc.*, "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat[.]" 549 U.S. 118, 128-29 (2007); *see also id.* at 129 (collecting cases). On the other hand, an asylum seeker who endures the wait to apply for

[1] Defendants cite *AILA* for the proposition that asylum seekers may not challenge asylum eligibility policies that have not yet been applied to them. ECF No. 52 at 8. *AILA* will not bear the weight Defendants place on it. In *AILA*, the D.C. Circuit addressed a challenge under 8 U.S.C. § 1252(e)(3), which provides for "[j]udicial review of determinations under section 1225(b) of [Title 8] and its implementation" only under extremely limited conditions. 199 F.3d at 1358. However, Congress did not impose such restrictions on review of claims pertaining to § 1158, such as the ones at issue here, or on asylum determinations in other proceedings, *see* 8 U.S.C. § 1229; 8 C.F.R. § 208.9. As the Supreme Court has observed, where "Congress wanted [a] jurisdictional bar to encompass [particular] decisions [under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996] . . . it expressed precisely that meaning." *Kucana v. Holder*, 558 U.S. 233, 249 (2010). It is therefore unlikely that a challenge to the Attorney General's exercise of § 1158 rulemaking authority falls within § 1252(e)(3). *See id.* ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

asylum at a designated port of entry complies with the Rule – and may therefore lack standing to challenge its validity. Therefore, as a matter of logic, the only way for an asylum seeker to assert the invalidity of the Rule is to risk summary removal or to forego applying for asylum for the lifespan of the litigation. And the Supreme Court has permitted attorneys to assert their clients' rights without naming them as parties. *See Caplin & Drysdale*, 491 U.S. at 623 n.3.

Finally, notwithstanding their citations to various jurisdictional provisions of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1252, Defendants do not argue that they preclude review of Plaintiffs' claims under the Administrative Procedure Act ("APA"). ECF No. 52 at 8. The APA's zone-of-interests test is "not meant to be especially demanding," and "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (citations omitted). Defendants ignore this test in favor of a misplaced focus on whether the INA itself provides an express cause of action. *See id.* ("We do not require any 'indication of congressional purpose to benefit the would-be plaintiff.'" (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1068 (W.D. Wash. 2017).

Nor have Defendants demonstrated a strong likelihood of success or even a substantial case that the Rule is valid. Defendants continue to rely on the Attorney General's general authority to promulgate categorical bars, a point no one disputes. ECF No. 52 at 8-9; *see* ECF No. 43 at 21. But Defendants fail to engage with the specific conflict at issue here: that where "Congress unambiguously stated that manner of entry has no effect on an alien's ability to *apply* for asylum," Defendants cannot plausibly contend that "it can be the *sole* factor by which the alien is *rendered ineligible*." ECF No. 43 at 21.[2] And to the extent that Defendants now argue that the

[2] Rather than address the statute's own terms, Defendants appear to argue instead that Article 31 of the 1967 U.N. Protocol does not provide an independently enforceable bar against the Rule. ECF No. 52 at 9-10. But as the Supreme Court has explained, where "the plain language of th[e] statute appears to settle the question," courts look to the U.N. Protocol "to determine only whether there is 'clearly expressed legislative intention' contrary to that language." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987). Because Defendants fail to address the statutory

statute is ambiguous and the Rule is entitled to *Chevron* deference, ECF No. 52 at 9, they fail to explain why their interpretation of § 1158 is reasonable, given that the Rule imposes a categorical bar based on a factor that has been universally recognized as bearing little weight, *see* ECF No. 43 at 22 (collecting cases).

Because the Court's temporary restraining order concluded that the Immigration Organizations had established serious questions going to the merits of their notice-and-comment claims, ECF No. 43 at 27-29, it follows that Defendants also have shown serious questions going to the merits. *Cf. Leiva-Perez,* 640 F.3d at 970 (explaining that the "serious questions" test requires less than "showing that success is more likely than not"). Nonetheless, the existence of such questions does not support a stay. First, Defendants have not shown a probability of demonstrating that the Rule is valid, so the presence or absence of defects in the process by which it was promulgated are largely immaterial to whether it should remain in place. Second, as explained below, Defendants have not shown that "the balance of hardships tips sharply in [their] favor." *Id.* at 970.

**B. Irreparable Injury**

At the outset, the Court is compelled to reject Defendants' argument that an injunction against the Executive Branch "a fortiori" imposes irreparable injury. *See Washington v. Trump,* 847 F.3d 1151, 1168 (9th Cir. 2017)*, cert. denied sub nom. Golden v. Washington,* 138 S. Ct. 448 (2017) ("[T]o the extent that the Government claims that it has suffered an institutional injury by erosion of the separation of powers, that injury is not 'irreparable.' It may yet pursue and vindicate its interests in the full course of this litigation."); *Texas v. United States*, 787 F.3d 733, 767-68 (5th Cir. 2015) (finding no irreparable injury because, while the United States "claims that the injunction offends separation of powers and federalism, . . . it is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect those principles."). Cases identifying the irreparable harm from the injunction of State *statutes* do not hold otherwise. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *O Centro*

---

language of § 1158, their arguments about the U.N. Protocol are of little moment.

*Espirita Beneficiente Uniao De Vegetal v. Ashcroft*, 314 F.3d 463, 467 (10th Cir. 2002); *cf. N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1255-56 (10th Cir. 2017) (distinguishing *King* where "Federal Appellants have been enjoined from effectuating their interpretation of the Act and their internal regulations").[3]

Defendants' remaining claims of irreparable injury are inseparable from their arguments that the Rule best serves the public interest by avoiding harm to potential asylum seekers. ECF No. 52 at 4-5. As explained below, the Court finds those arguments unpersuasive.

**C. Substantial Injury to Other Parties**

Defendants' argument on the third factor fails on both fronts. First, Defendants' argument that the Immigration Organizations *themselves* must have suffered "irreparable harm," ECF No. 52 at 6, fails because Defendants have not shown serious questions on third-party standing. Further, Defendants conflate the preliminary injunction standard with "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 433 (citations omitted). This test permits the Court to consider the harm to non-parties. *See Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014); *Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012). Defendants raise no credible argument that asylum seekers are not parties "interested" in the validity of the Rule, and the TRO Order details the injuries they face. *See* ECF No. 43 at 30-31.

Second, Defendants' argument that the Immigration Organizations suffer no harm because they may now comment on the Rule is not supported by authority and does not address cases

[3] Nor does a requirement to implement the existing statutory scheme per the status quo – under which the government retains the discretion to deny asylum in every case – come close to the affirmative intrusions required by the injunctions stayed in other cases. *See I.N.S. v. Legalization Assistance Project of Los Angeles Cty. Fed'n of Labor*, 510 U.S. 1301, 1302-03 (1993) (O'Connor, J., in chambers) (injunction "requiring the INS to, among other things, identify and adjudicate legalization applications filed by certain categories of applicants, not arrest or deport certain classes of immigrants, and temporarily grant certain classes of immigrants stays of deportation and employment authorizations"); *Heckler v. Lopez*, 463 U.S. 1328, 1331 (1983) (finding injunction would likely be reversed on scope alone, regardless of the merits, because "its mandatory nature, its treatment of the statutory requirement of exhaustion of administrative remedies, and its direction to the Secretary to pay benefits on an interim basis to parties who have neither been found by the Secretary nor by a court of competent jurisdiction to be disabled, significantly interferes with the distribution between administrative and judicial responsibility for enforcement of the Social Security Act which Congress has established"); *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978) ("request for an order directing action by the Secretary of State in foreign affairs").

holding otherwise. *See* ECF No. 43 at 31; *California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 830 (N.D. Cal. 2017).

**D. Public Interest**

The last factor in the analysis is the public interest. As to this point, the Government largely repeats the arguments from its prior brief. Similarly, the Court arrives at the same conclusion regarding where the public interest lies at this stage of the case. ECF No. 43 at 32-33. Noting Congress's clearly-expressed intent regarding the availability of asylum, the Court gives substantial weight to the political branches' control over immigration, *see Landon v. Plascencia*, 459 U.S. 21, 34 (1982), and in particular that the Supreme Court has "repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). The Court also considers that "where the agency's discretion has been clearly constrained by Congress," courts have concluded that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Ramirez v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 7, 33 (D.D.C. 2018) (alteration in original) (second quoting *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)). The Rule deviates substantially from this mandate.

In addition to these more abstract considerations, Defendants argue that the public interest suffers a more practical harm because, while the Rule is enjoined, more asylum seekers will cross illegally between ports of entry. ECF No. 52 at 4-5. Defendants have the right, as they have asserted, to "use every legal tool available to halt this dangerous and illegal practice." ECF No. 52 at 4. But Defendants have not shown even serious questions that the Rule is, in fact, legal. Moreover, the record to date reveals that, far from using every available tool, Defendants have been actively deterring asylum seekers from ports of entry. *See, e.g.*, ECF No. 35-3 at 17-28.

Finally, the Court rejects Defendants' implicit suggestion that the only way to fix a statute they disagree with is to issue a rule that directly contravenes the statute. As Justice Gorsuch noted, "[i]f a statute needs repair, there's a constitutionally prescribed way to do it. It's called legislation. To be sure, the demands of bicameralism and presentment are real and the process can

be protracted. But the difficulty of making new laws isn't some bug in the constitutional design: it's the point of the design, the better to preserve liberty." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1990 (2017) (Gorsuch, J., with Thomas, J., dissenting); see also U.S. Const., art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States[.]").

The motion is denied.

**IT IS SO ORDERED.**

Dated: November 30, 2018



JON S. TIGAR
United States District Judge