Jocelyn D. Larkin (SBN 110817)
Lindsay Nako (SBN 239090)
IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone:  (510) 845-3473
Fax:  (510) 845-3654
Email:  jlarkin@impactfund.org

Rebecca Smullin (SBN 250274)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
Fax: (202) 588-7795
Email: rsmullin@citizen.org

Attorneys for Amicus Curiae Public Citizen, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>            Defendants. | Case No. 18-cv-06810-JST<br><br>**BRIEF OF AMICUS CURIAE PUBLIC CITIZEN, INC., IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing: December 19, 2018, 9:30 a.m. |

**INTEREST OF AMICUS CURIAE**

Amicus curiae Public Citizen, Inc., is a nonprofit consumer and public-policy advocacy organization that appears on behalf of its members nationwide before Congress, administrative agencies, and courts. Public Citizen works on a wide range of issues, including enactment and promulgation of laws and regulations protecting consumers, workers, and the public. A great deal of Public Citizen's work involves participation in federal rulemaking proceedings and in litigation seeking judicial review of agency actions in such proceedings, where Public Citizen appears as both a challenger of unlawful agency action and a defender of lawful exercises of agency authority. As a result, Public Citizen has considerable interest in and experience regarding the principles of administrative law that govern agency rulemaking, including those that determine whether an agency action is a rule whose promulgation requires compliance with the notice-and-comment rulemaking procedures set forth in 5 U.S.C. § 553. Public Citizen submits this brief to assist the Court in appreciating the importance of the notice-and-comment procedures that were bypassed in the issuance of the rule challenged in this case and the consequent narrowness with which the statutory exceptions to notice-and-comment rulemaking must be applied.

**ARGUMENT**

**I.      Notice-and-comment rulemaking procedures serve vital public interests.**

The notice-and-comment rulemaking process set forth in section 4 of the Administrative Procedure Act (APA), 5 U.S.C. § 553, was one of the APA's central innovations. Notice-and-comment rulemaking under section 553 serves the vital function of allowing the public to participate in and inform agencies' development of rules that carry the force of law. The *Attorney General's Manual on the Administrative Procedure Act*—the seminal 1947 publication in which the Department of Justice, which was instrumental in the APA's development, expressed its understanding of the statute—puts it plainly: "[T]he purpose of section 4 is to guarantee to the public an opportunity to participate in the rulemaking process." U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 26 (1947). Likewise, the courts have long recognized that "[s]ection 553 was enacted to give the public an opportunity to participate in the rule-making process." *Texaco, Inc. v. FPC*, 412 F.2d 740 (3d Cir. 1969); *accord, e.g.*, *Batterton v.*

*Marshall*, 648 F.2d 694, 704 (D.C. Cir. 1980). As the Ninth Circuit has stated, this policy favoring public participation in rulemaking "reflect[s] 'a judgment by Congress that the public interest is served by a careful and open review of proposed administrative rules and regulations.'" *Alcaraz v. Block*, 746 F.2d 593, 610 (9th Cir. 1984) (quoting *Philadelphia Citizens in Action v. Schweiker*, 669 F.2d 877, 881 (3d Cir. 1982)).

Congress's judgment in requiring notice and an opportunity for comment on proposed new rules reflects a number of critically important purposes. Notice-and-comment rulemaking helps to legitimize agency rulemaking by ensuring it conforms to norms of fairness and participatory democracy. With the rise of the administrative state and the increasing reliance by Congress on agencies to promulgate rules with the force of law pursuant to broad authority delegated by Congress, responsibility for critical decisions about the content of the laws that bind members of the public has shifted from elected legislators to unelected agency officials. Notice-and-comment rulemaking procedures give members of the public a role in determining how agency officials exercise rulemaking authority and thereby "reintroduce[] a representative public voice, thus ensuring 'fairness to affected parties after governmental authority has been delegated to unrepresentative agencies.'" *Alcaraz*, 746 F.2d at 611 (quoting *Batterton*, 648 F.2d at 703).

The openness inherent in notice-and-comment rulemaking is critical to the legitimacy of governmental decisionmaking in a representative democracy. "Put simply, the *public* is treated unfairly when a rulemaker hides his crucial decisions, or his reasons for them, or when he fails to give good faith attention to all the information and contending views relevant to the issues before him." J. Skelly Wright, *Courts and the Rulemaking Process: The Limits of Judicial Review*, 59 Cornell L. Rev. 375, 379 (1975). Thus, as the Supreme Court has put it, notice-and-comment rulemaking is "designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969); *see also Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1027–28 (D.C. Cir. 1978) ("[I]f the Agency, in carrying out its 'essentially legislative task,' has infused the administrative process with the degree of openness, explanation, and participatory democracy required by the APA, it will thereby have 'negate(d) the dangers of arbitrariness and irrationality in the formulation of rules.'").

In addition, the notice-and-comment process plays an essential role in enhancing the quality of rulemaking by providing agencies with important information, which in turn helps ensure that they fulfill congressional aims and conform to substantive limits Congress has placed on their authority. Agency rulemaking authority is derived from Congress. It must therefore comply with statutory mandates and represent a rational and non-arbitrary exercise of any discretion Congress has granted the agency. *See* 5 U.S.C. § 706(2)(A). To meet those standards, an agency engaged in rulemaking "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). An agency fails to carry out this obligation if it "entirely fail[s] to consider an important aspect of the problem." *Id.*

Thus, the essential touchstone of proper rulemaking, in common with other agency action, is that it reflects rational "consideration of the relevant factors." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). And in order to consider all "relevant factors," the agency must know what they are. Notice-and-comment rulemaking assists agencies in identifying the considerations, legal and factual, that are relevant to their decisions, and in reasonably weighing them. As the Ninth Circuit has long recognized, a key purpose of notice-and-comment rulemaking is to "create[] a pre-publication dialogue which allows the agency to educate itself on the full range of interests the rule affects." *Alcaraz*, 746 F.2d at 611; *see also Pac. Coast European Conf. v. United States*, 350 F.2d 197, 205 (1965) ("[T]he purpose of [notice-and-comment rulemaking] is to permit the agency to educate itself."). Notice-and-comment rulemaking is thus "a primary method of assuring that an agency's decisions will be informed and responsive." *State of N.J. Dep't of Envtl. Protection v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980).

Beyond providing agencies with necessary input, notice-and-comment rulemaking increases agency accountability for the lawfulness and rationality of substantive rulemaking outcomes. The requirements that an agency consider relevant factors and provide a "concise general statement of [a rule's] basis and purpose," 5 U.S.C. § 553(c), carry with them an obligation to "consider and respond to significant comments received during the period for public

comment." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015). Indeed, "the opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *ACLU v. FCC*, 823 F.2d 1554, 1581 (1987) (citations omitted). The obligation to respond to significant comments deters arbitrary decisionmaking by ensuring that the agency has genuinely taken into account factors relevant to its decisions. Conversely, an agency's failure to "respond to 'significant' comments, *i.e.*, those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule," may "reveal[] that the agency's decision was not based on consideration of the relevant factors." *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (citing *Home Box Office v. FCC*, 567 F.2d 9, 35 & n.58 (D.C. Cir. 1977), and *Thompson v. Clark*, 741 F.2d 401, 409 (D.C. Cir.1984)); *see, e.g.*, *State Farm*, 463 U.S. at 50 (holding that agency acted arbitrarily and capriciously when it "submitted no reasons at all" for rejecting a proposed alternative to its rule).

The requirement that agencies address significant comments also facilitates judicial review of the lawfulness of agency action by forcing agency decisionmakers to commit to and articulate the legal, factual, and policy rationales for rules. Because the lawfulness of any particular action depends solely on the reasons for it articulated by the agency at the time it takes the action, *see SEC v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943), the agency's crystallization of its position in its response to comments provides the necessary foundation for judicial review by ensuring that the agency will identify and state the "legal and factual justifications for the court to review." Robert Knowles, *National Security Rulemaking*, 41 Fla. St. U. L. Rev. 883, 890 (2014); *see also State Farm*, 463 U.S. at 42. The agency's articulation of its views in the rulemaking process can also provide the basis for a court's determination whether the agency's decision is based on a construction of governing statutes that is entitled to deference under the principles of *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). *See United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001); *Anna Jacques Hosp. v. Burwell*, 797 F.3d 1155, 1166 (D.C. Cir. 2015).

At bottom, the substance of an agency's response to the comments and information it receives during the notice-and-comment process is the ultimate measure of whether the agency has acted lawfully. The legal basis asserted by an agency in response to comments challenging its

authority to take an action determines whether its action is "in accordance with law," as required by 5 U.S.C. § 706(2)(A). *See, e.g.*, *Transitional Hosps. Corp. of La., Inc. v. Shalala*, 222 F.3d 1019, 1029 (D.C. Cir. 2000). And where the law gives an agency regulatory discretion, the agency's response to comments reveals whether it has fulfilled its obligation to "cogently explain why it has exercised its discretion in a given manner." *State Farm*, 463 U.S. at 48. An inadequately reasoned or supported response to comments may reveal that "the agency has failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary and capricious standard." *Id*. at 56.

Courts have recognized the critical importance of notice-and-comment rulemaking in a variety of doctrines that facilitate enforcement of the requirements of section 553. For example, an agency generally cannot seek to evade notice-and-comment by issuing an "interim" rule first and seeking comment later, as the agency did here: "It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later." *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005). Moreover, courts addressing the merits of claimed notice-and-comment violations recognize that "utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002). As the Ninth Circuit has put it, an agency that has failed to comply with section 553 "can rely on harmless error only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.'" *Buschmann v. Schweiker*, 676 F.2d 352, 358 (9th Cir. 1982) (citations omitted). And for much the same reason, a litigant's standing to challenge a rule based on an agency's failure to engage in notice-and-comment rulemaking does not depend on a demonstration that the agency would have promulgated a different rule had it complied with the statute; rather, "[a]ll that is necessary is to show that the procedural step was connected to the substantive result" that affects the challenger's concrete interests. *Sugar Cane*, 289 F.3d at 94–95. "If a party claiming the deprivation of a right to notice-and-comment rulemaking under the APA had to show that its comment would have altered the agency's rule, section 553 would be a dead letter." *Id*.

**II.     The exceptions to notice-and-comment invoked here are narrowly construed.**

In light of the importance of section 553's requirements and the congressional objectives underlying them, courts have uniformly recognized that they must narrowly construe the statutory exceptions to the notice-and-comment requirements:

> Congress was concerned that the exceptions to section 553, though necessary, might be used too broadly. The Senate noted that the courts have a "duty ... to prevent avoidance of the requirements of the [Act] by any manner or form of indirection." S. Doc. No. 248, 79th Cong., 2d Sess. 217 (1946); *see American Bus Ass'n v. United States,* 627 F.2d 525, 528 (D.C. Cir. 1980) ("the legislative history of the section is scattered with warnings that various of the exceptions are not to be used to escape the requirements of section 553"). We have stated that "[t]he exceptions to section 553 will be 'narrowly construed and only reluctantly countenanced.'" *Alcaraz v. Block,* 746 F.2d [at] 612 … (citations omitted).

*San Diego Air Sports Ctr., Inc. v. FAA,* 887 F.2d 966, 969 (9th Cir. 1989); *see also, e.g.,* *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015), *aff'd by equally divided court*, 136 S. Ct. 2271 (2016); *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012); *Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995); *U.S. Steel Corp. v. EPA*, 649 F.2d 572 (8th Cir. 1981); *N.J. Dep't of Envtl. Protection*, 626 F.2d at 1045; *Am. Iron & Steel Inst. v. EPA*, 568 F.2d 284, 292 (3d Cir. 1977).

Moreover, an agency's determination that a rule falls within an exception to section 553 is entitled to no judicial deference because "an agency has no interpretive authority over the APA." *Sorenson Comm'c'ns. Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014). Courts must make the "meticulous and demanding" determination whether an exception applies de novo. *Id.*; *see also Independent Guard Ass'n of Nev. Local No. 1 v. O'Leary*, 57 F.3d 766, 769 (9th Cir. 1995).

These principles apply fully to both of the exceptions to notice-and-comment procedures claimed here: the exception for "military or foreign affairs function[s]" in 5 U.S.C. § 553(a)(1), and the "good cause" exception applicable where the agency finds that "notice and public procedure … are impracticable, unnecessary, or contrary to the public interest," *id*. § 553(b)(B).

**A.     The foreign affairs exception is inapplicable.**

The Ninth Circuit has squarely held that the "military or foreign affairs function" exception of section 553(a)(1) "must be narrowly construed." *O'Leary*, 57 F.3d at 769. The rule of narrow construction reflects Congress's intent that the exception is applicable "only 'to the extent' that the

excepted subjects are *directly* involved." *Id.* (quoting S. Doc. No. 248, 79th Cong., 2d Sess. 199 (1946) (emphasis added)). Consistent with this view, the *Attorney General's Manual* emphasized Congress's stated intent to limit the "foreign affairs function[s]" exempted by section 553(a)(1):

> As to the meaning of "foreign affairs function", both the Senate and House reports state: "The phrase 'foreign affairs functions,' … is not to be loosely interpreted to mean any function extending beyond the borders of the United States but only those 'affairs' which so affect relations with other governments that, for example, public rule making provisions would clearly provoke definitely undesirable international consequences."

*Manual*, at 26 (citation omitted).

Here, the assertion that a regulation determining rights of noncitizens to apply for and obtain political asylum falls within the foreign affairs exception is incompatible with the principle that the exception must be narrowly construed. The Ninth Circuit has cautioned that "[t]he foreign affairs exception would become distended if applied to [immigration] actions generally, even though immigration matters typically implicate foreign affairs," and, thus, "[f]or the exception to apply, the public rulemaking provisions should provoke definitely undesirable international consequences." *Yassini v. Crosland*, 618 F.2d 1356, 1360 n.4 (9th Cir. 1980) (citing *Hou Ching Chow v. Attorney General*, 263 F. Supp. 1288 (D.D.C. 1973), and S. Rep. No. 79-762, at 13 (1945)). Tellingly, the federal government has not invoked the foreign affairs exception in other cases where notice-and-comment requirements have been held applicable to regulations affecting the eligibility of noncitizens to obtain relief against removal. *See Texas v. United States*, 809 F.3d at 170–78. And the Supreme Court long ago held in *Wong Yang Sung v. McGrath*, 339 U.S. 33, 51 (1950), that section 5 of the APA, 5 U.S.C. § 554, which contains an exception for "military and foreign affairs functions" identical to the one in section 553, *see* 5 U.S.C. 554(a)(4), applied to deportation proceedings for noncitizens. *See Hou Ching Chow*, 362 F. Supp. at 1290–91 & nn.5– 8. Again, there was no hint in *Wong Yang Sung*, decided in the immediate wake of the APA's enactment, that the foreign affairs exception might apply.

Accordingly, the Ninth Circuit and other courts of appeals have held that regulations affecting rights of immigrants fall within the foreign affairs exception only under narrow circumstances, such as cases in which the regulations implement U.S. foreign policy toward

particular countries, and notice-and-comment proceedings might threaten to reveal sensitive information underlying that policy, impair relations with the targeted countries, or pose an imminent threat to national security. *See Rajah v. Mukasey*, 544 F.3d 427, 437 (2d Cir. 2008) (holding that regulations requiring registration of noncitizens from specified countries following the September 11 attacks did not require notice and comment); *see also*, *e.g.*, *Yassini*, 618 F.2d at 1360–61 (holding that immigration regulations specifically implementing U.S. policy toward Iran following the takeover of the U.S. Embassy in Tehran did not require notice and comment).

By contrast, where regulations affect the rights of immigrants who have entered the United States, and neither implement U.S. foreign policy directed toward particular countries nor otherwise threaten "definitely undesirable international consequences," the foreign affairs exception does not apply. *Zhang*, 55 F.3d at 744 (quoting *Yassini*, 618 F.2d at 1360 n.4); *Jean v. Nelson*, 711 F.2d 1455, 1477–78 (11th Cir. 1983), *vacated and rev'd on other grounds,* 727 F.2d 957 (11th Cir. 1984) (en banc), *aff'd,* 472 U.S. 846 (1985). *Zhang* concerned a rule regarding whether fear of being subjected to Chinese family planning policies could serve as a basis for a claim of asylum; *Jean* considered a rule regarding detention of Haitian refugees pending determination of their refugee status. In both cases, the courts held that application of the foreign affairs exception would stretch the exception beyond its limits because of the absence of any reason to believe that "undesirable international consequences … would result if rulemaking were employed." *Zhang*, 55 F.3d at 745; *Jean*, 711 F.2d at 1478.

Here, as in *Zhang* and *Jean*, the regulation at issue concerns the rights of persons within this country and is not aimed at implementing a policy directed at the governments of their countries of origin. Indeed, the case for application of the exception here is even more tenuous than in those cases because, unlike the regulations in *Zhang* and *Jean*, the rule here does not even involve immigrants from or policies specific to particular countries. Moreover, although the rule relates to immigrants who have crossed our border with Mexico, there is no reasonable basis for believing that it involves U.S. foreign policy towards Mexico, as its impact is on the rights of immigrants who are present in this country, not on matters directly concerning our relationship

with Mexico. Thus, under a properly narrow construction of the foreign affairs exception, the exception does not extend to the regulation at issue.

### B.     The good cause exception is inapplicable here.

The "good cause" exception is similarly subject to a narrow construction that excludes the regulation at issue. That exception excuses agencies from the obligation to engage in notice-and-comment proceedings where those procedures would be "impracticable" or "contrary to the public interest." 5 U.S.C. § 553(b)(B). When it crafted that exception, Congress explained that the exception is not intended to go beyond genuinely exigent circumstances:

> The exemption of situations of emergency or necessity is not an "escape clause" in the sense that any agency has discretion to disregard [the APA's] terms or the facts. A true and supported or supportable finding of necessity or emergency must be made and published. "Impracticable" means a situation in which the due and required execution of the agency functions would be unavoidably prevented by its undertaking public rule-making proceedings.

S. Doc. No. 248, 79th Cong., 2d Sess. 200 (1946), *quoted in O'Leary*, 57 F.3d at 769.

A host of judicial decisions in the Ninth Circuit and other courts of appeals reflect the same narrow reading: "The good cause exception is essentially an emergency procedure," *Buschmann*, 676 F.2d at 357, and it "should be invoked only in emergency situations when delay would do real harm," *Action on Smoking & Health v. CAB*, 713 F.2d 795, 800 (D.C. Cir. 1983). *See also*, *e.g.*, *United States v. Ross*, 848 F.3d 1129, 1132 (D.C. Cir. 2017); *United States v. Valverde*, 628 F.3d 1159, 1164–65 (9th Cir. 2010); *San Diego Air Sports*, 887 F.2d at 969; *Alcaraz*, 746 F.2d at 612; *Philadelphia Citizens*, 669 F.2d at 882.

The exigent circumstances justifying invocation of the exception may be present when there is an imminent risk of harm to members of the public, *see*, *e.g.*, *Hawaii Helicopter Operators Ass'n v. FAA,* 51 F.3d 212 (9th Cir. 1995), in the unusual circumstances where the notice-and-comment procedures themselves would be self-defeating or have adverse consequences, *see Buschmann*, 676 F.2d at 357, or in the equally unusual situation where engaging in notice-and-comment would "unavoidably prevent[]" the agency from "the due and required execution of agency functions," *O'Leary*, 57 F.3d at 769. By contrast, "speculative" and unsupported claims of harm—even very serious harm—not genuinely attributable to the notice-

and-comment process do not suffice. *Valverde*, 628 F.3d at 1167 (speculative risks associated with sex offenders did not justify failure to engage in notice-and-comment rulemaking); *see also San Diego Air Sports*, 887 F,2d at 970 (unsubstantiated risk of injury was not good cause).

Here, no exigency exists sufficient to justify forgoing notice-and-comment rulemaking under the appropriately narrow reading of the good cause exception. There can be no serious suggestion that immigration authorities will be impeded in carrying out the basic functions of their agencies if, pending the completion of notice-and-comment rulemaking, they continue to follow longstanding statutory requirements regarding the ability of noncitizens present in the United States to apply for and receive asylum. And no alleged "emergency" on the southern border justifies bypassing notice-and-comment here. Even assuming that the arrival of a "caravan" of immigrants constitutes a border-security emergency as opposed to a humanitarian crisis, the challenged regulation does not address border security or prevent unlawful entry. Rather, it concerns the rights of noncitizens seeking asylum within the United States, and that subject has no direct connection to any threats of imminent harm at the border. At most, instituting the rule without notice-and-comment (even assuming the rule were otherwise lawful) would marginally reduce the number of asylum applications that would otherwise be received during the time notice-and-comment proceedings would require. Such a minor matter of alleged bureaucratic burden is not the kind of exigency to which the narrow good cause exception is addressed.

### CONCLUSION

For the foregoing reasons, the Court should grant the motion for preliminary injunction.

Respectfully submitted,

/s/ Jocelyn D. Larkin

Rebecca Smullin (SBN 250274)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
Fax: (202) 588-7795
Email: rsmullin@citizen.org

Jocelyn D. Larkin (SBN 110817)
Lindsay Nako (SBN 239090)
IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone:  (510) 845-3473
Fax:  (510) 845-3654
Email:  jlarkin@impactfund.org

Counsel for Amicus Curiae Public Citizen, Inc.

DATED: December 5, 2018