Jennifer Chang Newell (SBN 233033)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Lee Gelernt\*
Judy Rabinovitz\*
Omar C. Jadwat\*
Celso Perez (SBN 304924)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*ojadwat@aclu.org*
*cperez@aclu.org*

*Attorneys for Plaintiffs* (Additional counsel listed on following page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| East Bay Sanctuary Covenant, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> Donald J. Trump, President of the United States, *et al*., <br><br> Defendants. | Case No.: 18-cv-06810-JST <br><br> **PLAINTIFFS' NOTICE OF CORRECTED DECLARATION** |

| | |
|---|---|
| Melissa Crow* | Baher Azmy* |
| SOUTHERN POVERTY LAW CENTER | Angelo Guisado* |
| 1666 Connecticut Avenue NW, Suite 100 | Ghita Schwarz* |
| Washington, D.C. 20009 | CENTER FOR CONSTITUTIONAL RIGHTS |
| T: (202) 355-4471 | 666 Broadway, 7th Floor |
| F: (404) 221-5857 | New York, NY 10012 |
| *melissa.crow@splcenter.org* | T: (212) 614-6464 |
| | F: (212) 614-6499 |
| Mary Bauer* | *bazmy@ccrjustice.org* |
| SOUTHERN POVERTY LAW CENTER | *aguisado@ccrjustice.org* |
| 1000 Preston Avenue | *gshwartz@aclu.org* |
| Charlottesville, VA  22903 | |
| T:  (470) 606-9307 | Christine P. Sun (SBN 218701) |
| F:  (404) 221-5857 | Vasudha Talla (SBN 316219) |
| *mary.bauer@splcenter.org* | AMERICAN CIVIL LIBERTIES UNION |
| | FOUNDATION OF NORTHERN |
| | CALIFORNIA, INC. |
| | 39 Drumm Street |
| | San Francisco, CA 94111 |
| | T: (415) 621-2493 |
| | F: (415) 255-8437 |
| | *csun@aclunc.org* |
| *Attorneys for Plaintiffs* | *vtalla@aclunc.org* |

*\*Admitted pro hac vice*

The Declaration of Nicole Ramos filed December 4, *see* ECF No. 71-8, contained a typographic error in paragraph 18, line 3.  In the corrected declaration, attached hereto, "30 hours" is corrected to "3 hours."  No other changes have been made, except that the corrected declaration is dated today.

Dated: December 6, 2018

Jennifer Chang Newell (SBN 233033)
Cody Wofsy (SBN 294179)
Spencer Amdur (SBN 320069)
Julie Veroff (SBN 310161)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*jnewell@aclu.org*
*cwofsy@aclu.org*
*samdur@aclu.org*
*jveroff@aclu.org*

Melissa Crow*
SOUTHERN POVERTY LAW CENTER
1666 Connecticut Avenue NW, Suite 100
Washington, D.C. 20009
T: (202) 355-4471
F: (404) 221-5857
*melissa.crow@splcenter.org*

Mary Bauer*
SOUTHERN POVERTY LAW CENTER
1000 Preston Avenue
Charlottesville, VA 22903
T: (470) 606-9307
F: (404) 221-5857
*mary.bauer@splcenter.org*

*Attorneys for Plaintiffs*

*Admitted pro hac vice

Respectfully submitted,

/s/Lee Gelernt
Lee Gelernt*
Judy Rabinovitz*
Omar C. Jadwat*
Celso Perez (SBN 304924)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*ojadwat@aclu.org*
*cperez@aclu.org*

Christine P. Sun (SBN 218701)
Vasudha Talla (SBN 316219)
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-8437
*csun@aclu.org*
*vtalla@aclu.org*

Baher Azmy*
Angelo Guisado*
Gita Schwarz*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
T: (212) 614-6464
F: (212) 614-6499
*bazmy@ccrjustice.org*
*aguisado@ccrjustice.org*
*gschwartz@ccrjustice.org*

**CORRECTED DECLARATION OF NICOLE RAMOS**

I, Nicole Ramos, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise.  If called as a witness, I would testify competently and truthfully to these matters.

2. I am a U.S. licensed attorney practicing in the area of immigration law and human rights.  I am barred by the State of New York, and I am a former Assistant Federal Public Defender.  I am over the age of 18.

3. I am the Project Director for the Border Rights Project of Al Otro Lado, a nonprofit organization based in Los Angeles.

4. My colleagues and I currently represent about twenty unaccompanied children who wish to apply for asylum in the United States.

5. Because of the interim final rule, Al Otro Lado has been and, without an injunction will be, forced to divert substantial resources away from our core mission of providing legal services to individuals and families with children, to instead address the basic needs of unaccompanied children, who are our most vulnerable clients and who are presenting the most urgent humanitarian concerns in Tijuana.  As detailed below, Mexican officials are not permitting unaccompanied minors – including numerous minors we represent – to enter the United States at ports of entry, causing an enormous concentration of vulnerable minors facing danger and desperation in Tijuana.  The interim final rule categorically prevents our clients and others from obtaining asylum should they cross between ports of entry, and thus prevents children from crossing out of necessity between ports to seek asylum.  Absent an injunction of the rule's operation, therefore, the humanitarian crisis in

Tijuana – and the corresponding, overwhelming demands on our time and resources to assist these minors – will escalate and divert our focus from our core mission.

6. Every one of the children Al Otro Lado is representing has articulated to me or a member of our staff an intent to apply for asylum in the United States. In my opinion, most of the children have strong claims. Several of the children are LGBT and have faced severe persecution as a result. Others have been forced to engage in child labor. Some have family members who have been targeted for violence, putting the children at serious risk because of their family relationships. One child from Honduras was forced to watch the murder of his cousin; after that, he fled because he understood his life was at risk because of his family relationship. Several of the children fled after corrupt police perceived them to be informants. Should the interim final rule not be enjoined, they would be stuck in Tijuana, unable to be processed at a port of entry there, yet unable to cross between ports to seek asylum.

7. Advising and assisting our unaccompanied minor clients has been particularly time-consuming and emotionally draining. It has required staff on the Border Rights Project to shift our focus away from our core mission of providing legal services in order to focus almost exclusively on providing extensive non-legal services to unaccompanied minors.

8. As my colleague, Erika Pinheiro, explained in her supplemental declaration executed on November 16, 2018, and filed in this case, these unaccompanied children have no way to apply for asylum in the United States. Prior to the TRO, and without an injunction in force, they will be categorically ineligible for asylum if they enter between ports. They also are not being allowed to apply for asylum at ports of entry for the reasons detailed in the declaration.

9. Because unaccompanied children cannot apply on their own for asylum at ports of entry, on November 21, nine Al Otro Lado legal observers escorted eight unaccompanied children directly to the San Ysidro port of entry so that they could try to present themselves to CBP and express their desire to seek asylum. This effort required many hours of preparation to advise the children on what to expect and orient the legal observers who would accompany them to the port of entry. Although we were able to accompany these nine, we cannot accompany all children to the border due to resource constraints.

10. Despite our efforts, Mexican officials apprehended two of the children near the end of the line—a 17-year-old from Honduras and a 15-year-old from Mexico—before we reached the port of entry. These two children were detained by the Mexican immigration authorities for five days. They were released only after I spent dozens of hours over the course of five days negotiating with the Mexican government to facilitate their release. Both were severely traumatized as a result of this experience.

11. Our staff has worked many more hours than usual to address the non-legal needs of our unaccompanied minor clients, including helping to find them accommodations and coordinating with a local youth shelter to provide transportation. Immediately after the interim final rule was announced, up to 15 children at a time were waiting in our office around the clock while we arranged their accommodations. Our office often felt more like a daycare center than a legal services organization. Because our office was being used to shelter our unaccompanied minor clients, we could not spend as much time with our other clients.

12. After these clients moved to a local youth shelter, one of our attorneys spent several hours purchasing cell phones to make sure the children could communicate with us. That attorney's time would otherwise have been spent on casework.

13. Al Otro Lado has also spent countless hours attending to the emotional and mental health needs of our unaccompanied minor clients. Some of them have expressed suicidal thoughts. Currently, two of our staff members spend about half their time addressing the needs of our unaccompanied child clients.

14. Conditions for asylum seekers on the Mexican side of the border have become increasingly intolerable.

15. The Tijuana government opened up the Benito Juarez Sports Complex ("Benito Juarez") as a temporary shelter/camp for the migrants. I have visited Benito Juarez on several occasions. I have witnessed incredibly squalid conditions, with many migrants, including pregnant women and children, sleeping in the dirt with only plastic sheeting to protect them from the elements. I saw migrants sleeping in shelters made from branches that had fallen from the trees. Many migrants were suffering from respiratory illnesses, as evidenced by their persistent coughs.

16. More than 5,800 migrants had taken shelter at this outdoor facility by the end of November. This figure represents about three times the capacity of the facility. Migrants formed hours-long lines to get food and water, and migrants reported that there was not enough food for everyone. People do not have basic necessities, including diapers, blankets, or warm clothes.

17. The safety of the migrants at the camp is of grave concern. Recently, twenty migrants were kidnapped outside the sports complex. Despite promises of paid work, these

individuals were transported to Sonora, Mexico, where they were held against their will for several days. During this period, they were forced to clean blood and biological waste from a warehouse. They finally escaped through a window and made their way to a shelter, where many members of the group were recaptured. The kidnappers are currently seeking to extort money from the victims' families. One of the victims was released after someone paid his ransom. He is currently in hiding in Tijuana.

18. On Thursday, November 29, the government opened an indoor shelter facility in Ejido Matamoros, a very dangerous neighborhood. It is approximately a 30-minute drive from the San Ysidro port of entry. On foot, the journey would take about 3 hours. Initially, migrants had the option to stay at Benito Juarez or move to the new facility. Many were reluctant to move due to concerns about safety and the difficulty of making repeated trips to the port of entry to see what number was being called from "the list." As of Friday, November 30, local officials announced that they would be removing all portable toilets and cease providing services at Benito Juarez. Even with no water, electricity, and scarce food, there were still several hundred migrants at Benito Juarez as of December 2, 2018. Even with the addition of the new shelter, the available space remains inadequate, with the result that many migrants are sleeping in tents or outside in various locations around Tijuana.

Executed this 6 day of December 2018.

Nicole Ramos