## SUPPLEMENTAL DECLARATION OF EDNA YANG, AMERICAN GATEWAYS

I, Edna Yang, declare pursuant to 28 U.S.C. § 1726, as follows:

1. My name is Edna Yang, and I am currently the co-executive Director of American Gateways. I have worked at American Gateways since 2002. I have personal knowledge of the matters set forth herein, and I can and will testify thereto if called upon to do so.

2. In my earlier declaration submitted in this case, I addressed the substantive harm that American Gateways will experience because of a new Rule issued by the Department of Homeland Security and the Department of Justice titled *Circumvention of Lawful Pathways* ("the Rule"). This declaration addresses the similar harms that the previous transit ban, *Asylum Eligibility and Procedural Modifications*, 84 Fed. Reg. 33,829 (July 16, 2019), inflicted on American Gateways while it was in effect between September 2019 and June 2020. This declaration is meant to supplement my prior declaration and does not repeat prior content unless relevant.

3. As previously stated (at ¶ 3), the mission of American Gateways is to champion the dignity and human rights of immigrants, refugees, and survivors of persecution, torture, conflict, or human trafficking. Many aspects of our work were impacted by the prior transit ban.

4. For example, American Gateways provides direct representation to people appearing in the San Antonio Immigration Court. Many of these clients were subject to and harmed by the transit ban when it was in place. We also provide legal orientation, immigration workshops, and pro bono legal representation at three immigrant detention facilities in Central Texas: the T. Don Hutto Residential Center in Taylor, Texas; the South Texas Residential Center in Pearsall, Texas; and the Karnes County Residential Center in Karnes City, Texas. We also provide pro se support to detained people through our federally-funded Legal Orientation Program. We

routinely encountered people subject to the transit ban in our detained legal services work in all of these capacities, and that ban had a detrimental impact on that work.

**The Transit Bar Seriously and Irreparably Harmed American Gateways**

5.   The transit bar frustrated the mission of American Gateways, forced us to divert organizational resources, and caused irreparable harm to the organization.

6.   Our representation of clients subject to the transit ban took significantly more time and labor than our representation of other clients. This was for three reasons: First, we had to litigate adversarial, defensive Form I-589 applications in immigration court for clients who would otherwise would have been granted asylum affirmatively after non-adversarial interviews. Second, those clients were ineligible for asylum in immigration court and could pursue only withholding of removal and relief under the Convention Against Torture, which involve higher standards of proof, and which require separate applications for each family member. And third, these higher standards forced us to litigate more appeals for clients subject to the transit ban who otherwise would have been granted relief in immigration court. As stated in my earlier declaration (at ¶¶ 18-25), the Rule will have similar effects. Indeed, because we will also have to screen clients covered by the Rule for potential exceptions—and then work to gather evidence and develop arguments for those who might plausibly satisfy an exception—the new Rule will divert even more of our time and resources.

7.   The transit ban also forced American Gateways to divert resources in other ways. In particular, we were forced to revise many of our Legal Orientation Program materials to explain the bar—and the need to seek withholding or CAT relief—to participants.  This consumed significant staff time and effort. As discussed in my earlier declaration (at ¶¶ 26-27), the Rule will again have similar effects.

8. The transit ban also had an adverse impact on our work representing people in the credible fear interview process and in helping people understand removal proceedings via our Legal Orientation Program. Many more of the people we saw in this line of work were ineligible for asylum because of the transit ban, and we did not have the capacity to advocate for all of these people to overcome the bar. This caused significant frustration and burnout amongst our staff as we tried to fight a barrier that was often insurmountable. Here too, I expect the effect of the new Rule to be the same.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of June 2023.

_____