UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, et al.,<br><br>Defendants. | Case No. 18-cv-06810-JST<br><br>**ORDER DENYING EMERGENCY MOTION FOR STAY PENDING APPEAL**<br><br>Re: ECF No. 190 |

On July 25, 2023, the Court vacated and remanded Circumvention of Lawful Pathways ("the Rule"), 88 Fed. Reg. 31314 (May 16, 2023), a final rule promulgated by the Department of Justice and the Department of Homeland Security. ECF No. 187. The Court held that the Rule violates the Administrative Procedure Act ("APA") because it is contrary to law, is arbitrary and capricious, and was promulgated without adequate opportunity for public comment. *Id.* Upon Defendants' unopposed request, the Court stayed its order for fourteen days. *Id.* at 35.

Defendants now seek to stay the Court's order pending appeal. ECF No. 190. Because Defendants have not met their burden to demonstrate that such a stay is warranted, the Court will deny the motion.

**I.    LEGAL STANDARD**

The issuance of a stay is a matter of judicial discretion, not a matter of right, and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). In exercising its discretion, the Court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding;

and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## II.   DISCUSSION

### A.   Likelihood of Success on the Merits

"The first factor, likelihood of success on the merits, is the most important." *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 952 (9th Cir. 2020). In their motion for stay, Defendants do not articulate on what basis they believe they are likely to succeed on the merits of their appeal. ECF No. 190 at 7. Defendants simply state that, "as [they] explained in their briefing and at argument, the Rule is consistent with the asylum statute, is not arbitrary and capricious, and satisfies all applicable procedural requirements." *Id.* For the reasons articulated in the Court's order granting summary judgment to Plaintiffs, however, the Court concludes that Defendants have not made a strong showing that they are likely to succeed or shown a substantial case for relief on the merits.

### B.   Remaining Factors

The remaining factors neither weigh strongly in Defendants' favor nor overcome the first factor. *See Al Otro Lado v.* Wolf, 952 F.3d 999, 1010 (9th Cir. 2020) ("Only 'a stronger showing of one element may offset a weaker showing of another.'") (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019) (denying motion to stay pending appeal, based solely on failure to make a strong showing of likelihood of success on the merits). Because Defendants discuss the remaining factors together, the Court does the same here.

To be granted a stay, Defendants must show, at minimum, that "irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007. Defendants argue that the Court's order will irreparably harm the Government's foreign policy interests, namely "efforts with Mexico and other countries to address irregular migration," ECF No. 190 at 4, because the Rule is "necessary to securing continued foreign Government cooperation with the United States' foreign policy goals," *id.* at 6. Specifically, Defendants offer evidence indicating that vacatur "could potentially put . . . in jeopardy" Mexico's agreement to accept the return or removal of non-Mexican nationals under Title 8, ECF No. 176-2 ¶ 44; that

other countries "may take the view" that the U.S. is no longer committed to addressing irregular migration on a regional basis, *id.* ¶ 45, and that other countries "could be less inclined to support U.S. efforts to manage migratory flows," *id.* ¶ 46. These assertions, which are speculative, are not sufficient to establish that irreparable harm is *likely* to occur before the appeal is decided.

Defendants also argue that the Court's order will irreparably harm the Government's border management interests. *Id.* at 4. The Rule imposes a presumption of asylum ineligibility; likely as a result of this and other concurrent policy changes, the number of individuals encountered attempting to cross the border without authorization each day has dropped. Without the deterrent effect of the Rule, DHS predicts that encounter numbers could rise rapidly, straining DHS' enforcement operations. ECF No. 176-2 ¶¶ 28-37 (describing increased staffing and transportation costs, diversion of resources from other missions, and downstream economic costs). But these eventualities, if they occur, do not constitute irreparable harm; "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." *Al Otro Lado*, 952 F.3d at 1008 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The Court assumes for purposes of this order that some increase in the number of encounters is likely to occur when the Rule is vacated, but is not persuaded that any resulting injury to Defendants is irreparable.

Defendants also suggest the Court's order impermissibly intrudes on the Executive's interests in foreign affairs and border management, causing a different form of injury. While the Court is mindful of the Executive's unique role in the conduct of foreign policy, "[o]ur precedents, old and new, make clear that concerns of national security and foreign relations do not warrant abdication of the judicial role." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010). And while "[t]he [G]overnment's interest in efficient administration of the immigration laws at the border is . . . weighty," "control over matters of immigration is a sovereign prerogative, largely within the control of the executive *and the legislature*." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (emphasis added) ; *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of [noncitizens]."). Here, Congress has expressly provided that certain noncitizens may apply for

3

asylum and has constrained the agencies' discretion to impose additional conditions or limitations on asylum eligibility. Judicial review of such conditions to ensure fidelity to the express will of Congress is an appropriate exercise of judicial authority. And the Court notes that vacating the Rule does not affect the agencies' discretion to deny any or all individual applications for asylum—Congress vested the agencies with that broad discretion by statute. Congress' grant of authority to promulgate additional conditions and limitations on asylum *eligibility*, however, was circumscribed. The Executive Branch retains the full extent of the lawful tools it has available to address irregular migration and manage the border.

Further, issuance of a stay will injure other parties interested in this proceeding. While Defendants suggest the Court may only consider harm to Plaintiffs, the Court must consider "whether issuance of the stay will substantially injure the other parties *interested in the proceeding*," not simply the parties to this proceeding. *Nken*, 556 U.S. at 434*; see Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014). As described in the Court's order, the Rule exposes asylum seekers to serious risk of violence and will result in some number of asylum seekers with otherwise meritorious claims being denied access to an important protection. Those deemed ineligible for asylum who cannot meet the higher evidentiary burden required for other forms of protection will be deported to countries where they are at risk of further violence.

The public interest factor also does not favor a stay. As Defendants note, there is a "wide public interest in effective measures to prevent the [unauthorized] entry of [noncitizens] at the Mexican border." *United States v. Cortez*, 449 U.S. 411, 421 n.4 (1981)). "But the public also has an interest in ensuring that 'statutes enacted by [their] representatives' are not imperiled by executive fiat.'" *Al Otro Lado*, 952 F.3d at 1015 (quoting *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)). And "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "[W]here the agency's discretion has been clearly constrained by Congress[,] [t]he public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate." *Ramirez v. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 33 (D.D.C. 2018).

/ / /

## CONCLUSION

Weighing these factors, the Court concludes that a further stay pending appeal is not warranted here. Defendants' emergency motion for stay pending appeal is therefore denied. The Court's previously-issued 14 day stay remains in effect.

**IT IS SO ORDERED.**

Dated: August 1, 2023



JON S. TIGAR
United States District Judge