Omar C. Jadwat*
Lee Gelernt*
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
*ojadwat@aclu.org*
*lgelernt@aclu.org*

Morgan Russell (SBN 296137)
Spencer Amdur (SBN 320069)
Oscar Sarabia Roman (SBN 341385)
ACLU FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
*mrussell@aclu.org*
*samdur@aclu.org*
*osarabia@aclu.org*

*Attorneys for Plaintiffs (additional counsel listed on following page)*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

East Bay Sanctuary Covenant, *et al*.,

    *Plaintiffs*,

    v.

Donald J. Trump, *et al*.,

    *Defendants*.

Case No.: 18-cv-06810-JST

**PLAINTIFFS' REPLY BRIEF ON REMAND**

Melissa Crow*
CENTER FOR GENDER & REFUGEE
STUDIES
1121 14th Street, NW, Suite 200
Washington, DC 20005
T: (202) 355-4471
F: (415) 581-8824
*crowmelissa@uclawsf.edu*

Anne Peterson (SBN 258673)
Blaine Bookey (SBN 267596)
Karen Musalo (SBN 106882)
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister Street
San Francisco, CA  94102
T: (415) 610-5729
F: (415) 581-8824
*petersonanne@uclawsf.edu*
*bookeybl@uclawsf.edu*
*musalok@uclawsf.edu*

Robert Pauw**
CENTER FOR GENDER & REFUGEE
STUDIES
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA  98104
T: (206)682-1080
F: (206)689-2270
*rpauw@ghp-law.net*

Keren Zwick*
Colleen Cowgill (SBN 321542)
Mary Georgevich*
NATIONAL IMMIGRANT JUSTICE
CENTER
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
T: (312) 660-1370
F: (312) 660-1364
*kzwick@immigrantjustice.org*
*ccowgill@immigrantjustice.org*
*mgeorgevich@immigrantjustice.org*

Michelle (Minju) Y. Cho (SBN 321939)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-1478
*mcho@aclunc.org*

*Attorneys for Plaintiffs*

*\*Admitted Pro hac vice*
*\*\* Application for admission pro hac vice*
*forthcoming*

i

1

**TABLE OF CONTENTS**

2    INTRODUCTION ........................................................................................................... 1

3    ARGUMENT .................................................................................................................. 1

4        I.  Plaintiffs Continue To Have Standing To Challenge The Rule ......................... 1

5        II. The Termination Of The "Lawful Pathways" Underscores The
         Rule's Illegality .................................................................................................. 6

7    CONCLUSION ............................................................................................................... 8

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The Court should reaffirm its prior summary judgment order but amend it to hold that *FDA v. Alliance for Hippocratic Medicine* (*"Alliance"*), 602 U.S. 367 (2024), does not alter the Court's conclusions that Plaintiffs have standing; and that Defendants' elimination of the CBP One appointment system and parole programs underscore the Rule's illegality.

As to standing, the Ninth Circuit recently held that one of the Plaintiffs here—ImmDef—had standing under *Alliance* to challenge a separate asylum policy, echoing Plaintiffs' explanation in their opening brief on remand that "[a]s is relevant here, the Supreme Court's decision in *Alliance* reaffirmed *Havens* [*Realty Corp. v. Coleman*, 455 U.S. 363 (1982)]." ECF No. 217 at 4; *see Immigrant Defs. L. Ctr. v. Noem* ("*ImmDef*"), No. 25-2581, ___ F.4th ____, 2025 WL 2080742, at *9 (9th Cir. July 18, 2025) (reasoning that *Alliance* "reinforced the holding in *Havens Realty*"). In any event, multiple Plaintiffs have independently demonstrated standing based on financial harm. And the Supreme Court's decision concerning the scope of injunctive relief in *Trump v. CASA, Inc*., 145 S. Ct. 2540 (2025), has no bearing here because it explicitly did not address vacatur—the relief that this Court previously ordered and that Plaintiffs seek again now.

On the merits, the elimination of CBP One and the parole programs further illustrate why the Rule violates the asylum statute and has always been arbitrary and capricious.

**ARGUMENT**

**I.    Plaintiffs Continue To Have Standing To Challenge The Rule.**

<u>Standing Under *Havens* and *Alliance*</u>. As the Ninth Circuit recently explained, *Alliance* "reinforced the holding in *Havens Realty*" that a "plaintiff may assert organizational standing" "when a defendant's actions 'directly affect[] and interfere with[] with' [the] plaintiff's 'core business activities.'" *ImmDef*, 2025 WL 2080742, at *9 (some alterations in original) (quoting *Alliance*, 602 U.S. at 395). The plaintiffs in *Alliance* alleged only that the FDA's actions caused them to incur costs to oppose those actions through lobbying, advocacy, and education. 602 U.S. at 394-95. Here, by contrast, Plaintiffs have explained in detail how the Rule directly obstructs their core work of counseling and representing asylum seekers, in addition to requiring them to

1

divert resources. Pls.' Br. on Remand, ECF No. 217, at 4-6 (citing plaintiff declarations). As in *ImmDef*, this showing of concrete interference with Plaintiffs' "core business activities" of "providing direct representation, counseling, and legal assistance to noncitizens" goes far beyond the kind of "'issue-advocacy' work that was found insufficient" to establish standing in *Alliance*. *See ImmDef*, 2025 WL 2080742, at *9.

The Fifth Circuit reached the same conclusion on analogous facts in another decision issued after Plaintiffs filed their opening brief on remand. In *United States v. Texas*, 144 F.4th 632 (5th Cir. July 3, 2025), the court held that an organization whose "core activity" includes "providing legal representation and legal counseling" to asylum seekers had standing under *Havens* and *Alliance* to challenge a state immigration law. *Id.* at 649. Indeed, like the Ninth Circuit in *ImmDef*, the court reasoned that *Alliance* "reinforces, rather than undermines, [that] conclusion." *Id.* at 648. As with the plaintiff in the Fifth Circuit's decision, Plaintiffs here are not just "issue-advocacy organization[s]" but instead "provide legal services and legal counseling to low-income immigrants"—much as the plaintiff in *Havens* was "['] not only was an issue-advocacy organization, but also operated a housing counseling service.'" *See id.* (quoting *Alliance*, 602 U.S. at 395). And as with the law challenged in the Fifth Circuit case, the Rule here impairs Plaintiffs' core work because it "decrease[s] the overall number" of noncitizens that Plaintiffs can "successfully assist in asserting asylum . . . claims." *See id.* at 649.

None of Defendants' contrary arguments have merit. First, Defendants claim that Plaintiffs cannot assert "third-party standing." ECF No. 222 at 8-9. But Plaintiffs are not asserting third-party claims on behalf of their clients; they instead rely on harm to themselves. Defendants' reliance on *Kowalski v. Tesmer*, 543 U.S. 125 (2004)—which concerned an assertion of third-party standing is misplaced for the same reason. As the Ninth Circuit just reiterated in *ImmDef*, "'[o]rganizations are entitled to sue on their own behalf for injuries they have sustained.'" 2025 WL 2080742, at *8 (quoting *Havens*, 455 U.S. at 379 n.19).

2

Second, Defendants argue that "education and outreach expenditures . . . taken in response to a government policy . . . cannot satisfy standing." ECF No. 222 at 9. But even assuming such outreach-related harms on their own might be insufficient, Plaintiffs have demonstrated much more than that. Because of the Rule, Plaintiff EBSC has been able to represent far fewer clients in its core affirmative asylum practice than it could before. ECF No. 217 at 5 (citing Suppl. Smith Decl. ¶¶ 7-9, ECF 217-1). And the Rule "has similarly impaired the affirmative asylum programs" of Plaintiffs Tahirih, NCLR, and American Gateways by cutting off "their ability to serve people who would have been previously able to file affirmatively asylum applications." *Id.* at 5-6 (citing declarations). Similarly, "the Rule impedes th[e] core work" of "Plaintiffs that represent asylum seekers in removal proceedings in immigration court, as many do," "by making it much more difficult and resource-intensive to effectively provide that representation." *Id.* at 6 (same). In addition to requiring Plaintiffs to divert resources, the Rule has therefore "'perceptibly impaired[']" their "core business activities." *Alliance*, 602 U.S. at 395 (quoting *Havens*, 455 U.S. at 395); *see ImmDef*, 2025 WL 2080742, at *9; *United States v. Texas*, 144 F.4th at 648-49.

Third, Defendants incorrectly claim that reduction in the number of asylum seekers that Plaintiffs can serve does not constitute impairment of their activities. *See* ECF No. 222 at 10-11. But just as the *Havens* defendant's "racial steering" practices "'perceptibly impaired [the plaintiff organization]'s ability to provide counseling and referral services for low- and moderate-income homeseekers,'" the unlawful Rule perceptibly interferes with Plaintiffs' ability to do their core day-to-day work of representing asylum seekers. *See Alliance*, 602 U.S. at 395 (quoting *Havens*, 455 U.S. at 379). It is hard to imagine clearer evidence that this interference is "perceptible" than the fact that the Rule has caused Plaintiffs to represent fewer asylum seekers than they could otherwise. *See Texas*, 144 F.4th at 649 (holding that plaintiff organization established standing under *Alliance* where its affidavit explained that the challenged law would "decrease the overall number of low- and moderate-income immigrants [the organization] could successfully assist in

3

asserting asylum and other federal immigration claims").[1]

Financial Injury. In any event, Plaintiffs EBSC and ImmDef have established standing based on financial injury independent of *Havens* and *Alliance*. EBSC "has already suffered economic injury in the form of lost funding," and ImmDef similarly "faces a loss of funding." ECF No. 217 at 4, 6-7. And Defendants' suggestion that these Plaintiffs' evidence of financial harm is too vague, ECF No. 222 at 11-12, is foreclosed by precedent. The Ninth Circuit has already held that evidence of prospective loss of government funding equivalent to that offered by ImmDef is sufficient to confer standing to challenge a rule like that at issue here. *EBSC v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).[2]

Moreover, EBSC's concrete showing of financial harm goes well beyond what the Ninth Circuit previously held to be sufficient: "From May 2023 to May 2025, the number of affirmative asylum cases EBSC has filed decreased by more than 50 cases per year on average compared to the last year before the Rule took effect, leading to an average loss of over $100,000 of [its] per-case funding each year" from the California Department of Social Services. ECF 217 at 7 (citing Suppl. Smith Decl. ¶ 10, ECF No. 217-1); *cf.* ECF No. 222 at (Defendants complaining that

---

[1] Defendants also repeat arguments concerning *United States v. Texas*, 599 U.S. 670 (2023), and *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), that this Court already rejected. *See* Defs.' Suppl. Opp. Br. on Remand, ECF No. 222, at 6-7; *see also* Defs.' Cross-MSJ & Opp., ECF No. 176-1, at 9; Defs.' MSJ Reply, ECF No. 182 at 1-2. Those previously addressed arguments go beyond the scope of the Court's remand briefing order. ECF No. 209 at 1. And in any event, those arguments fail because, unlike the actions challenged in those cases, the Rule does not "implicate the Executive's exercise of enforcement discretion over whether to arrest or prosecute" and does implicate the "provision of legal benefits or legal status." SJ Order, ECF No. 187, at 11.

[2] *Compare EBSC v. Biden*, 993 F.3d at 663 ("The funding on which the Organizations critically depend is also jeopardized by the Rule. . . . CARECEN receives from [the California Department of Social Services] a flat amount of funding per client it assists, and because more of its clients are being put into more time- and resource-intensive withholding proceedings, it will assist less clients and receive less funding."), *with* Suppl. Toczylowski Decl. ¶ 15, ECF No. 217-3 ("As a result of assisting clients subject to [the Rule], ImmDef has been forced to handle fewer removal cases than we would otherwise accept, which promises to impact our funding and in turn our ability to provide representation in removal proceedings more generally. As panel attorneys through a program with the Public Defender Office in San Diego, if we are unable to take on new matters, we will not receive any of our budgeted funding from that source.")

"ImmDef does not quantify the number of cases it is currently handling versus those it handled previously"); *Alliance*, 602 U.S. at 385-86 (noting that the plaintiffs had not asserted any monetary harm).

These are not downstream effects on Plaintiffs, but rather direct "injuries to their own pocketbooks." *Washington v. Trump*, No. 25-807, ___ F.4th ____, 2025 WL 2061447, at *5 (9th Cir. July 23, 2025). And they are precisely the injuries that these same Plaintiffs foresaw at the outset of this case. *See* Decl. of Michael Smith ¶¶ 16-17, ECF No. 169-6 (predicting loss of funding from the California Department of Social Services); Decl. of Lindsay Toczylowski ¶¶ 36-37, ECF No. 169-4 (predicting loss of funding from the San Diego panel attorney program); SJ Order, ECF No. 187, at 10 (holding that EBSC's first declaration provided "uncontroverted evidence that the Rule" would "substantially affect [its] funding" sufficient to confer standing).

*Trump v. CASA, Inc.* Is Inapposite. Finally, contrary to Defendants' assertions, ECF No. 222 at 12-14, the Supreme Court's decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), has no bearing here. *CASA* concerned injunctive relief, which Plaintiffs do not seek. And the Court in *CASA* expressly noted that "[n]othing" in its opinion "resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at 2554 n.10. As Justice Kavanaugh has explained, "'[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) (citation omitted). The government's "newly minted position" to the contrary "is both novel and wrong." *Id.* at 827.

//

//

//

//

## II.      The Termination Of The "Lawful Pathways" Underscores The Rule's Illegality.

<u>The Rule Violates the Asylum Statute</u>. Termination of the CBP One appointment system and parole programs underscores that the Rule is inconsistent with the asylum statute. *See* Pls.' Br. on Remand, ECF No. 217, at 7-8. In response, Defendants argue that those "two pathways were not the only means of avoiding" the Rule's asylum bar and that noncitizens "still could have sought protection in a third country" or could seek to show "exceptionally compelling circumstances" for crossing the border between ports of entry. ECF No. 222 at 15-16. But the Rule's exceptions based on the purported availability of the CBP One and parole "pathways" were central to Defendants' argument that the Rule is distinguishable from the entry-based asylum ban held unlawful in *EBSC v. Biden*, 993 F.3d 640 (9th Cir. 2021). *See* SJ Order, ECF No. 187, at 17; *see also, e.g.*, Defs.' Cross-MSJ & Opp, ECF 176-1, at 14 (asserting that the Rule's asylum bar "can be avoided entirely if noncitizens receive authorization to travel to the United States under a DHS-approved parole process, present at a port of entry at a pre-scheduled time and place (including through use of CBP One), or apply for and are denied asylum or other protection in another country").

In any event, the transit-country-denial requirement and the exceptionally compelling circumstances exception alone cannot save the Rule. As this Court correctly explained, the transit-country-denial requirement is contrary to the asylum statute under *EBSC v. Garland*, 994 F.3d 962 (9th Cir. 2020). *See* SJ Order, ECF No. 187, at 16-19. And the fact that a noncitizen's "failure to present at a port of entry may be excused upon a showing of exceptionally compelling circumstances[] does not address the reason why restricting asylum eligibility based on place of entry conflicts with the law." *Id.* at 18. Moreover, the Supreme Court has held "that where the government cannot make an action 'mandatory,' it equally cannot require a showing of 'extraordinary circumstances to justify' a departure from that action." Pls.' Br. on Remand, ECF No. 217, at 11 (quoting *Gall v. United States*, 552 U.S. 38, 46-47 (2007)). That Defendants have eliminated CBP One and the parole programs simply reinforces this Court's prior ruling.[3]

_____

[3] The rest of Defendants' purported response concerning whether termination of CBP One and the parole programs affects the Court's statutory analysis instead rehashes their failed statutory arguments more generally. ECF No. 222 at 14-15. That strays far beyond the narrow merits issue on which this Court granted leave for additional briefing: "the impact of Executive Order 14165

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Rule Is Arbitrary and Capricious. The termination of CBP One and the parole programs also reinforce this Court's conclusion that the Rule is arbitrary and capricious, particularly with respect to noncitizens who crossed the southern border between January 20 and May 11, 2025. *See* Pls.' Br. on Remand, ECF No. 217, at 8-9.

In response, Defendants note that whether a rule is arbitrary and capricious is assessed based on the record at the time the rule was issued. ECF No. 222 at 16. But as Plaintiffs argued from the start, the Rule's reliance on the availability of the purported pathways was *always* arbitrary and capricious because those programs were "completely discretionary," were "not incorporated into the Rule," and "could be rescinded (or enjoined) at any time." Pls. MSJ Br., ECF No. 169-1, at 18-19; *accord* Pls.' MSJ Reply, ECF No. 181, at 14-15. Indeed, in response to comments that the parole programs could end, the Rule claimed that the CBP One "pathway" would still be available. *See* Rule, 88 Fed. Reg. 31314, 31410 (May 16, 2023) ("If these parole processes are enjoined, Ukrainian and CHNV [Cuban, Haitian, Nicaraguan, and Venezuelan] nationals would still be able to avoid the rebuttable presumption if they present at a POE [POE] pursuant to a pre-scheduled time and place" using CBP One.). And when Defendants claimed that the Rule "'provides alternative pathways' to asylum," Pls.' MSJ Reply, ECF No. 181 at 5 (quoting ECF No. 176-1 at 14), Plaintiffs explained that "the Rule itself says exactly the opposite: 'this rule does not create, expand, or otherwise constitute the basis for any lawful pathways,'" *id.* (quoting 88 Fed. Reg. at 31370). The elimination of CBP One and the parole programs therefore further illustrates the fallacy in the Rule's core assumption "that [its] exceptions will, at the very least, present meaningful options to noncitizens subject to the Rule." SJ Order, ECF No. 187, at 24.

---

§ 7(a)-(b), which terminated the 'lawful pathways' on which the Rule relies in part." Scheduling Order Following Remand, ECF No. 209, at 1 (cleaned up). In any event, Defendants' arguments lack merit for the reasons this Court previously explained. *See* SJ Order, ECF 187, at 15-19. And insofar as Defendants stress the Rule's purported "focus" on "systemic efficiency," ECF No. 222 at 14-15, that goal does not cure the Rule's illegality. The prior bans asserted the same goal, but the Ninth Circuit nonetheless held them unlawful. *See EBSC v. Garland*, 994 F.3d at 982 (transit ban was intended to "relieve[] strain" in "overburdened asylum system"); *id.* at 989 (Miller, J., concurring) (systemic efficiency was transit ban's "stated purpose"); Entry Ban Rule, 83 Fed. Reg. 55934, 55934 (Nov. 9, 2018) (purpose to "channel inadmissible aliens to ports of entry" to ensure "controlled, orderly, and lawful" processing); *id.* at 55944-48 (purpose to address the "inefficiencies of the current asylum system").

Meanwhile, it is Defendants who seek to avoid the "foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (cleaned up). They argue that "the fact that certain of those pathways no longer exist does not undermine the lawfulness of the Rule," because the Rule "would be lawful" even if it "included no exceptions at all." ECF No. 222 at 16. Defendants cite no such assertion in the Rule itself. To the contrary, as the Court observed, the Rule itself claims that it would "[']generally offer opportunities for those with valid claims to seek protection[']"; "justifies the breadth of its presumption of ineligibility by reference to its multiple exceptions and the opportunity to rebut it"; and points "to the other exceptions and opportunity for rebuttal to justify the scope of each exception." ECF No. 187 at 23 (collecting citations to the Rule).

Finally, Defendants argue that "the elimination of any pathways discussed in the Rule had little to no practical impact" because "Proclamation 10888 was in effect" between January 20 and May 11, 2025 "and cut off access to the asylum process altogether for aliens who crossed the border" during that period. ECF No. 222 at 17. As Defendants acknowledge, however, that Proclamation has been held unlawful. *Refugee & Immigrant Ctr. for Educ. & Legal Servs. ("RAICES") v. Noem*, No. 25-cv-306, 2025 WL 1825431, at \*31-43 (D.D.C. July 2, 2025). The existence of another illegal policy does not cure the illegality of the Rule.[4]

## CONCLUSION

The Court should reaffirm its prior summary judgment order and modify its opinion to hold that Plaintiffs continue to have standing and that the termination of CBP One and the parole programs further confirm the Rule's illegality.

---

[4] Although the district court's order in *RAICES* has been partially stayed pending appeal with respect to asylum, the decisive vote on the motions panel on that issue acknowledged that it was a "close" question that "remains open to definitive resolution by a merits panel." *RAICES v. Noem*, No. 25-5243, Doc. 2128457, at 35 (D.C. Cir. Aug. 1, 2025) (Millett, J., concurring). Moreover, the appeal in that litigation has been expedited. *Id.* at 2 (Order). Accordingly, the injunction against the Proclamation's override of asylum may soon be upheld, such that the Rule at issue in this case will stand as the principal obstacle to asylum for noncitizens still in the United States who crossed the southern border between June 20 and May 11, 2025.

1

Dated: August 22, 2025

Respectfully submitted,

2

3

Keren Zwick*
Colleen Cowgill (SBN 321542)
Mary Georgevich*
NATIONAL IMMIGRANT JUSTICE
CENTER
224 S. Michigan Ave., Suite 600
Chicago, Illinois 60604
T: (312) 660-1370
F: (312) 660-1505
*kzwick@immigrantjustice.org*
*ccowgill@immigrantjustice.org*
*mgeorgevich@immigrantjustice.org*

4

5

6

7

8

Melissa Crow*
CENTER FOR GENDER & REFUGEE
STUDIES
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
T: (202) 355-4471
F: (415) 581-8824
*crowmelissa@uclawsf.edu*

9

10

11

12

13

Anne Peterson (SBN 258673)
Blaine Bookey (SBN 267596)
Julie Bourdoiseau (SBN 340462)
Karen Musalo (SBN 106882)
CENTER FOR GENDER & REFUGEE
STUDIES
200 McAllister Street
San Francisco, CA 94102
T: (415) 610-5729
F: (415) 581-8824
*petersonanne@uclawsf.edu*
*bookeybl@uclawsf.edu*
*bourdoiseaujulie@uclawsf.edu*
*musalok@uclawsf.edu*

14

15

16

17

18

19

20

Robert Pauw**
CENTER FOR GENDER & REFUGEE
STUDIES
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
T: (206) 682-1080
F: (206) 689-2270
*rpauw@ghp-law.net*

21

22

23

24

25

*Attorneys for Plaintiffs*

26

*\*Admitted Pro hac vice*
*\*\* Application for pro hac vice admission*
*forthcoming*

27

28

/s/ Lee Gelernt
Lee Gelernt*
Omar Jadwat*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
*lgelernt@aclu.org*
*ojadwat@aclu.org*

Morgan Russell (SBN 296137)
Spencer Amdur (SBN 320069)
Oscar Sarabia Roman (SBN 341385)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-1198
*mrussell@aclu.org*
*samdur@aclu.org*
*osarabia@aclu.org*

Michelle (Minju) Y. Cho (SBN 321939)
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
T: (415) 621-2493
F: (415) 255-1478
*mcho@aclu.org*